### In re AMES.

#### PETER SMITH & SONS GROCERY CO. v. DAILY.

(Circuit Court of Appeals, Sixth Circuit. May 14, 1923.)

No. 3808.

1. **Chattel mortgages ⬦6—Instrument held contract of conditional sale and not a chattel mortgage.**

   An instrument under which store fixtures were transferred *held*, under the law of Michigan, a contract of conditional sale, and not a chattel mortgage.

2. **Chattel mortgages ⬦6—Attached affidavit does not change character of conditional sale contract.**

   Under the law of Michigan, which requires an affidavit attached to a chattel mortgage, but not to a conditional sale contract, if an instrument is ambiguous, an affidavit attached may be evidence, and perhaps controlling evidence, of its character; but, if the contract is clearly one of conditional sale, the attaching of an affidavit cannot change its character.

3. **Courts ⬦372(4)—Federal courts will enforce contract rights under state law when contract was made.**

   Where the rights of the parties to a contract are clear under the state law as settled by decision when the contract was made, that is the law of the contract in the federal courts, though it may have been rendered doubtful by later state decisions.

Petition to Revise an Order of the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

In the matter of Ernest E. Ames, bankrupt; Lewis H. Daily, trustee.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On petition of the Peter Smith & Sons Grocery Company to revise order of the District Court. Reversed and remanded.

For opinion below, see 283 Fed. 465.

Edward S. Clark, of Bay City, Mich., for petitioner.

Hubert J. Gaffney, of Bay City, Mich. (Coumans & Gaffney, of Bay City, Mich., on the brief), for respondent.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. This case again presents, under slightly new circumstances, the question whether an instrument is a chattel mortgage, which the Michigan laws require to be recorded to make it valid as against creditors, or is a conditional sale contract, which need not be so recorded, which question we have frequently considered, most recently in Smith v. Carukin, 259 Fed. 51, 170 C. C. A. 51, In re Nader, 283 Fed. 742, and Vander Lei v. Blakely, 284 Fed. 516. From our study and review of the Michigan decisions, we were led to the conclusion that prior to the Paul Case, 213 Mich. 609, 182 N. W. 44, 17 A. L. R. 1416, the existence of an unescapable obligation by the vendee to pay the full purchase price, whether such obligation was evidenced only by the contract, or also by separate negotiable notes, did not of itself transform into a chattel mortgage a formal contract of title reservation. We thought the true criterion was whether there was an intention that the vendor could both keep the title to the property and bring suit for the purchase price, and that, in ambiguous cases, other evidences of intent as well as this might serve to reveal the true character of the transaction. To say that a positive obligation on the part of the purchaser to pay the full price is inconsistent with a conditional sale is to say that conditional sales are confined to options to buy, and we do not think the Michigan Supreme Court has intended to make that statement.

It will be remembered, also, that the validity of unrecorded conditional sale contracts, even as against creditors, had been generally upheld in Michigan; that the policy of this rule, and particularly as to goods intended for resale, had been much doubted, and confusion had arisen; and that the Legislature then declared the policy of the state by requiring a record of conditional sale contracts when relating to property intended for resale, leaving it unnecessary as to other classes of property.

[1] In March, 1920, and about a year before the decision of the Paul Case, the petitioner in this proceeding, as vendor, made a contract for the sale of store fixtures to one who later became a bankrupt. It is quoted in the margin.[1] It seems to us to be, under what we have considered to be the Michigan rule then existing, quite clearly and unambiguously a contract of conditional sale and nothing else; indeed, it is difficult to see how such a contract could be drafted, preserving

[1] "It is hereby agreed as follows, by and between Peter Smith & Sons Grocery Company, a Michigan corporation of Detroit, Michigan (hereinafter called the seller), and Ernest E. Ames, of Bay City, Michigan (hereinafter called the buyer):

"The seller hereby agrees to sell and the buyer agrees to buy the fol-

289 F.—14

the proper rights of the vendor, and keep further away than this one does from any idea of absolute sale and present vesting of title in the vendee, with only a lien reserved by way of security.

Observation of the several clauses of this contract confirms this conclusion. The language is not that of a present purchase and sale. It is "agrees to sell" and "agrees to buy," and this is plainly language of futurity when it is read in connection with the express statement that the title shall remain in the seller until the full contract is ex-

lowing fixtures and equipment (hereinafter called the property) now located in the store known as 400 Center avenue, Bay City, Michigan, viz.:

"List No. 1. [Items omitted.]

"List No. 2. [Items omitted.]

"The purchase price shall be the sum of $4,700, payable as follows, viz.: Five hundred dollars in hand paid, the receipt of which is hereby acknowledged, and the balance in monthly payments of $100 each on the 1st day of each month, beginning with May 1, 1920. The buyer agrees to pay the same accordingly.

"All unpaid installments of the purchase price shall bear interest at 6 per cent. per annum, payable semiannually.

"The title to the property and to each item thereof shall remain in the seller, until the entire purchase price, with interest thereon, is fully paid.

"The buyer shall pay the taxes, if any, which may be assessed or levied against the property, and shall also pay all other costs and charges reasonably necessary to protect and preserve the property until it is fully paid for. He shall keep the property insured against loss by fire, to an amount not less than $4,000, in companies satisfactory to the seller, and with loss, if any, payable to the seller as its interest may appear. The insurance policies shall, on demand, be delivered to the seller.

"The buyer shall not sell, assign, or dispose of, or attempt to sell, assign, or dispose of, the whole or any part of the property, or remove or attempt to remove the whole or any part thereof from the premises aforesaid, without the written assent of the seller.

"In case of the buyer's failure to pay any taxes, insurance, or other costs or charges necessary to protect or preserve the property, then the seller may pay the same and add the amount thereof to the amount otherwise payable by the buyer, under this agreement, with interest thereon at the rate of 6 per cent. per annum, payable semiannually.

"If default is made in the payment of any installment due on this contract, or of any part thereof, or interest thereon, or of the insurance premiums, taxes, or other costs or charges aforesaid, when and as they become due and payable respectively, then the whole sum still unpaid shall, at the option of the seller, without notice, become at once due and payable, any provision herein to the contrary notwithstanding.

"If the buyer shall make default in or shall be guilty of any breach of any of the terms or provisions of this contract, or if the property aforesaid is seized or levied upon, or attempted to be seized or levied upon, under any legal process issued against the buyer, then it shall be lawful for the seller to forthwith enter upon the buyer's premises, or any place or places where the property aforesaid or any part thereof may be, and retake possession thereof and dispose of the same without being accountable to the buyer for the proceeds thereof, or for the repayment of any sums theretofore paid thereon by the buyer. In such case any sums theretofore paid shall be treated as liquidated damages for the breach of this agreement by the buyer and as a fair rental for the property aforesaid.

"In case of any breach or default on the part of the buyer, the seller may, at his option, either rescind this contract or affirm the same and sue as for a breach thereof.

"In case the buyer so desires, he may at any time on or before April 1, 1920, elect not to purchase the property described in list No. 2, in which

ecuted. The use of the words "buyer" and "seller" is wholly appropriate to a conditional sale. So are the provisions that the buyer shall pay the taxes and insurance. Both these burdens are proper to be assumed by the vendee in a true conditional sale of personalty, as they commonly are with real estate, and he may rightly be required to procure their discharge if necessary to prevent a destruction of the thing which he has agreed to buy. A conditional vendee has an insurable interest, as the vendor has, and, if the interest duly appears, the policy may issue to either, with loss payable also to the other as his interest may appear. So, too, it is appropriate that, in case the vendor has to pay these items, they should be added to the purchase price. They are naturally accretions thereto. Indeed, the absence of any provision creating an immediate personal liability by the vendee to the vendor for these items is of some significance. The provision that in case of default the whole sum also may become due at once merely evidences a reasonable agreement between the vendor and the vendee. An agreement for the precipitation of an obligation does not change its character, nor does this clause indicate any intent inconsistent with the expressly declared relations of the parties. The provisions for reclamation in case of default are precisely and fully appropriate to a conditional sale contract, and they declare the normal rule of law applicable thereto rather than any rule pertaining to the relations of mortgagor and mortgagee. A mortgagee who takes possession to enforce his security must account to the mortgagor for the property taken, and for payments already made. He has no claim for liquidated damages and he can have no claim for rental; such a claim cannot accrue to a mortgagee out of possession. It is too clear for question that, if this power of reclamation is exercised, the vendee's personal liability for the purchase price, as such, is at an end.

The option to rescind or affirm we are unable to construe in accordance with the argument of the petitioner, who thinks that the contemplated rescission was to be a complete one, restoring both parties to their original position, and that to "affirm the same and sue as for a breach" means to stand upon the reclamation and sue for the difference between the contract price and the value of the property as reclaimed. We think that the "rescission" here contemplated means the same thing as the "reclamation" of the previous paragraph, which inserted the provisions as to liquidated damages and rental only for

case the said property shall be returned forthwith to the seller in as good condition as when taken, and the sum of $1,000 shall be deducted from the purchase price of the property.

"Executed in duplicate, at Bay City, Michigan, this 25th day of March, 1920.                    Peter Smith & Sons Grocery Company,
                                    "By J. Henry Smith, President.

                    "Ernest E. Ames."

"County of Bay, State of Michigan ss.:

"Ernest E. Ames, of Bay City, Michigan, being duly sworn, deposes and says that he is the buyer named in the annexed contract, for the sale of personal property and the retention of the title thereto, and that he has knowledge of the facts and that the consideration of said instrument was actual and adequate and that the same was given in good faith for the purposes therein set forth.                    Ernest E. Ames.

"[Duly sworn to.]"

the purpose of avoiding the otherwise possible consequences of a rescission. We think, too, that "affirm the same and sue as for a breach" means to affirm the sale and sue for the purchase price; but, as we have pointed out in prior opinions, since this course is eventually inconsistent with a reservation of title, the bringing of such suit or at the latest the taking of judgment, will be a waiver of the title reservation and operate as a transfer of the title.

[2] We come then to the affidavit attached to the paper; such affidavit of consideration is required only with a chattel mortgage. This affidavit of the vendee and the paper with this addition were accepted by the vendor, if not, indeed, drafted by him. If the contract were ambiguous in its character, an affidavit appropriate only to a mortgage might serve as evidence, and perhaps controlling evidence; but, where there is no ambiguity, such evidence of intent is unimportant. It cannot be supposed that the contract was really regarded by the vendor as a mortgage, since he did not record it. A natural inference is that this affidavit was added as a matter of abundant caution to an instrument that was to continue in force 32 months, and as a safeguard against statutes or decisions which might from time to time develop on this subject. There seems to be no other reasonable explanation for adding this affidavit and then withholding the paper from record. Further, the language of this particular affidavit seems industriously chosen to repel any inference of intent to deal with a title which passed by the instrument. It refers to "the annexed contract for the sale of personal property and the retention of title thereto."

We come now to the effect of the Paul Case, decided a year later. We have in Re Nader expressed the opinion that the provisions in that case as to the affidavit controlled the result. It is naturally to be inferred that the contract was an ambiguous one, and was interpreted by this evidence of intent. It used the language of present purchase and sale; it expressly provided for a separate promissory note for the purchase price; it did not contain the elaborate provisions here found, expressly fixing the rights of the parties in the case of reclamation as those of conditional vendor and vendee; it contained an express call for the mortgage affidavit; and it did not carefully preserve, as this one does, until default, the vendor's election to take back the property and end the matter, or to pass the title and collect the debt. It is thus substantially distinguishable.

Still further, it is clear that, as to the items in list No. 2, the conditional character of the sale is demonstrated by the option to cancel. The character of part naturally attaches to the whole. Vander Lei v. Blakely, supra.

[3] We are satisfied, as a matter of exercising our independent judgment, that upon the general legal principles involved and the Michigan decisions up to that time, this contract when given was a valid conditional sale, and we are not at all convinced that the Michigan Supreme Court, upon this contract and these circumstances, would have decided otherwise. In such a situation it is our duty to apply the test as we think it existed when the contract was made. This is

but an application of the familiar rule of Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, often since declared and applied by the Supreme Court and by this court. See, for example, the Great Southern Hotel Co. Cases, 86 Fed. 370, 30 C. C. A. 108; Id., 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778. Suit was brought to enforce claims under the Ohio building lien law. After the claim arose, the Ohio Supreme Court held the law unconstitutional. This court was unable to accept this view, but thought the law was valid, and, because the rights of the parties had arisen before the Ohio decision, refused to follow it. The Supreme Court, in a careful review, confirmed this result, and approved the opinion of Judge Lurton, speaking for this court.

If the Supreme Court of Michigan in the Paul Case had decided, directly or by necessary implication, that the present contract would be invalid without record, we would be strongly inclined to adopt and follow that opinion, regardless of its later date, because, if a question of state law is open and doubtful, a later decision of its Supreme Court carries the assumption that the same rule of law existed before; but where the rule of law at the earlier date is as clear as this seems to us, and where the later decision is of such doubtful applicability as we find here, we cannot accept uncertain inferences from it in place of the otherwise clear result. John Deere Co. v. Mowry (C. C. A. 6) 222 Fed. 1, 6, 7, 137 C. C. A. 539.

The order must be reversed, and the case remanded, for further proceedings in accordance with this opinion.