In re HARMONY THEATRE CO.

Petition of MARR & COLTON CO., Inc.

(District Court, E. D. Michigan, S. D.    April 24, 1924.)

No. 5542.

**Bankruptcy ⬅184(2)—Chattel mortgages ⬅6—Contract held one of absolute and not conditional sale; mortgage invalid if not recorded.**

> Where the contract under which personal property was transferred to bankrupt, with reservation of title, provided that the seller might enforce payment of the purchase price without passing title to the purchaser, it was not one of conditional sale, but of absolute sale with reservation of title as security, and in view of the law of Michigan was invalid against bankruptcy trustee, where not recorded as a chattel mortgage.

In Bankruptcy.    In the matter of the Harmony Theatre Company, bankrupt.    On review of order of referee denying petition of the Marr & Colton Company, Inc., for reclamation of property.    Affirmed.

Warren, Cady, Hill & Hamblen, of Detroit, Mich., for petitioner.
Walter I. McKenzie, of Detroit, Mich., for trustee in bankruptcy.

TUTTLE, District Judge.    This is a petition to review an order of one of the referees in bankruptcy denying a petition for reclamation of a certain pipe organ delivered by petitioner to the bankrupt prior to bankruptcy under a certain so-called title-retaining contract.    The sole question involved is whether such contract is one of conditional sale reserving title in the petitioner (the vendor) until payment of the purchase price, or is one of absolute sale by which such title passed to the bankrupt (the vendee) subject to a so-called reservation of title in petitioner, as security, in the nature of a chattel mortgage, for the payment of such purchase price, as was held by the referee whose order is here sought to be reviewed.    The contract, which was in writing, is in the following form and language:

"Agreement made this 27th day of April, 1921, by and between the Marr & Colton Company, Inc., of Warsaw, N. Y., hereinafter designated as the 'company,' and Harmony Theatre Co., Inc., of Detroit, Mich., hereinafter designated as the 'purchaser,' witnesseth:

"(1) For and in consideration of the sum of twelve thousand six hundred dollars ($12,600.00) to be paid to the company by the purchaser, as hereinafter specified, and for the further consideration named in paragraph (4), the company undertakes to build a concert organ in accordance with the attached specifications and to install it in the Harmony Theatre, Detroit, Mich., not later than August 15, 1921, tuned and finished ready for use as soon as consistent with good workmanship.

"(2) And the company hereby agrees upon reasonable notice in writing to make good any defect in material or workmanship that may develop in said organ during the one year next following its installation, provided no other organ builder be admitted to the interior of the organ without the company's consent.    The company, however, shall not be held responsible for loss or damage resulting from improper use or care of said organ, or from fire, water, or force majeure, nor from the ravages of rats, mice, or other vermin, nor from the defects in the building in which the organ is installed.

"(3) The purchaser hereby orders the company to build and install said organ, and agrees to pay therefor to the order of the company in lawful money of the U. S. A. the above-mentioned sum of twelve thousand six hundred

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dollars ($12,600.00) in the following manner, to wit: One thousand two hundred sixty dollars ($1,260.00) on signing the contract, and two thousand five hundred twenty dollars ($2,520.00) upon delivery of the organ or the major portion thereof in the above-named building, and the remaining part, being eight thousand eight hundred twenty dollars ($8,820.00), with interest at the rate of 6 per cent. per annum upon completion of the organ ready for use, payable at the rate of four hundred ninety dollars ($490.00) per month, secured by notes or trade acceptances satisfactory to the company of equal amount, bearing interest at the rate of 6 per cent. per annum, for the entire unpaid balance, and in the event that notes or other evidences of indebtedness are taken as part of the purchase price, title to the organ is to remain in the company until such notes or other evidences of indebtedness are fully paid.

"(4) The purchaser further agrees that upon all programs or printed matter relating to the use of the organ, or to events in which it is to be used, the words 'Concert Organ, manufactured by the Marr & Colton Company, Inc., Warsaw, N. Y.,' shall prominently appear.

"(5) The purchaser further agrees at his own expense to have the organ and its parts and appliances insured in some solvent board insurance company upon delivery of the same into the aforesaid building, in an amount to be approved by the company and for its benefit, and to deliver said policy to the company; said insurance to be continued in force until the said organ is fully paid for, and the title transferred to the purchaser as above provided. And in the event that the purchaser neglects or refuses to provide the said insurance, the company may provide same, the premium being a charge against the purchaser and payable to the company on demand.

"(6) The purchaser further agrees to permit the delivery and installation of the organ and its appliances, and to provide the aforesaid building, including the space for the reception of the organ and blowing gear, in a condition ready and suitable therefor, at such time as shall secure to the company reasonable opportunity for its erection and to give quiet possession for a sufficient time to enable the voicers to properly tune and finish the organ; said purchaser also to wire blower motor ready for operation and connect the motor with the mains, and to furnish light, heat, and power for erecting and tuning the organ, and the said company shall not be called upon to bear the extra expense consequent upon the delay or failure of the purchaser in respect to the foregoing.

"(7) And it is hereby mutually agreed by and between the parties hereto that in case said purchaser shall claim that the organ hereby sold is not fully in accordance with the contract and the specifications hereto annexed, that said purchaser shall notify said company within ten days after the installation of said organ, or otherwise said purchaser shall be deemed to have accepted said organ.

"(8) It is expressly agreed and understood by and between the parties to this agreement that an acceptance of a payment after the due date of same shall not be construed as a waiver of any of the terms of this agreement.

"(9) It is further agreed that, in the event of the failure on the part of the purchaser to pay the said purchase price or any part thereof, as herein provided, when the same shall become due and payable, then the party of the first part may enter upon the premises, and into the house and place occupied by the party of the second part, or any other premises or place where the said organ may be located, and take possession of and remove such property therefrom, with or without legal process.

"(10) Upon default of the payment of the purchase price, or any part thereof, when the same shall become due and payable, as herein provided, the company and its assigns may, at its or their option, without thereby waiving title to said organ, require payment of the balance then remaining unpaid, whether evidenced by notes or other evidences of indebtedness by their terms payable at a future date, or otherwise, whereupon such balance shall become immediately due and payable.

"In witness whereof, the parties hereto have interchangeably affixed their signatures the day and year first written above.

"This contract subject to approval at home office."

One clause of this contract unmistakably establishes its character as one of absolute sale with retention of title by way of security only. It will be noted that such contract contains the following provision:

"Upon default of the payment of the purchase price, or any part thereof, when the same shall become due and payable, as herein provided, the company and its assigns may, at its or their option, without thereby waiving title to said organ, require payment of the balance then remaining unpaid, whether evidenced by notes or other evidences of indebtedness by their terms payable at a future date, or otherwise, whereupon such balance shall become immediately due and payable."

So the contract expressly gives the vendor the right to enforce payment of the purchase price without passing title to the vendee. Under the decisions of the Circuit Court of Appeals of this circuit, as well as those of the Michigan Supreme Court, such a provision in a contract has uniformly been held to give to such contract the legal nature and effect of an absolute sale with reservation of title merely as security for payment of the purchase price. In re Nader, 283 Fed. 746 (C. C. A. 6); Vander Lei v. Blakely, 284 Fed. 517 (C. C. A. 6); In re Ames, 289 Fed. 212 (C. C. A. 6); Atkinson v. Japink, 186 Mich. 335, 152 N. W. 1079; Young v. Phillips, 202 Mich. 480, 168 N. W. 549; Id., 203 Mich. 566, 169 N. W. 822; National Cash Register Co. v. Paul, 213 Mich. 609, 182 N. W. 44, 17 A. L. R. 1416; Phillips-Michigan Co. v. Field Body Corporation, 221 Mich. 17, 190 N. W. 682; Heyman Co. v. Buck, 221 Mich. 225, 190 N. W. 631; Peter Schuttler Co. v. Gunther, 222 Mich. 430, 192 N. W. 661; Thomas Spacing Machine Co. v. Security Trust Co., 223 Mich. 164, 193 N. W. 790.

It follows that the order of the referee must be, and it hereby is, affirmed