BURROUGHS ADDING MACHINE CO. *v.* WIESELBERG.

1. CHATTEL MORTGAGES—SALES INSTRUMENTS IN THE NATURE OF
CHATTEL MORTGAGES SHOULD BE RECORDED.
If an instrument presents a case of security in the nature
of a chattel mortgage, then it is to be held, when rights
of third parties intervene, to come within the law relat-
ing to the recording of such an instrument.[1]

2. SAME—WHETHER INSTRUMENT A CHATTEL MORTGAGE TESTED BY
ITS TERMS.
The question as to whether an instrument is in the nature
of a chattel mortgage turns upon whether, with rights
and remedies thereunder, express or implied or by opera-
tion of law, it provides security for the unconditional
payment of an obligation assumed with reference to
chattels.[2]

3. SALES—CONDITIONAL SALE CONTRACT—TERMS.
A pure conditional sale gives possession of chattels with
the right to ownership upon payment of the agreed price,
retaining title in the seller with right of reclamation in
case of default, or the alternative of passing the title by
suit for the purchase price.[3]

4. CHATTEL MORTGAGES—WHAT CONSTITUTE.
The right to retake the property sold, retain payments
made, estimate wear and tear, compute damage and look
to the buyer for deficiency in the agreed price is con-
sonant only with remedies under instruments providing
for security in the nature of chattel mortgages; for in
such case the security is but an incident of a debt abso-
lutely due from the buyer to the seller.[4]

5. SALES.
The vendor is not entitled to the title and possession of
the property sold, and to be paid for it also.[5]

6. CHATTEL MORTGAGES—SALES—NATURE OF INSTRUMENT TO BE DE-
TERMINED FROM ITS TERMS.
The character of an instrument is to be determined from

[1]Chattel Mortgages, 11 C. J. §§ 186 (1926 Anno), 201; [2]Id., 11
C. J. § 14; [3]Sales, 35 Cyc. p. 652; [4]Chattel Mortgages, 11 C. J.
§ 18; [5]Sales, 35 Cyc. p. 696.
On what amounts to a conditional sale, see note in 17 A. L. R.
1421.

its terms, from a consideration of rights and remedies. stipulated therein or allowed by law as between the parties, and to some extent in the light shed by the circumstances surrounding the transaction.[6]

7. SAME.

If the seller is not limited to the right to retake the property and retain the payments made, but after reclamation may enforce payment of the remainder of the full agreed price, and the instrument is so worded as to permit this to be done, then the courts will recognize it for what it is in fact and law, security in the nature of a chattel mortgage.[7]

8. SAME.

If the title is retained as security for the payment of the full price and the obligation to further pay is not abated by a retaking of the property and retention of partial payments, then it is not a pure conditional sale, but an undertaking in the nature of a chattel mortgage.[8]

9. SAME.

Instruments giving the seller the rights and remedies of a mortgagee against the buyer and chattels the subject of sale if rights of third persons do not intervene, but so colored as to be employed in support of a claim of conditional sale only when rights of third persons do intervene are *ab initio* instruments in the nature of chattel mortgages.[9]

10. SAME.

It is fair to assume that the seller intends to employ every available remedy open under the law, and it is equally fair to adjudicate with such in mind, in determining the nature of the sales instrument.[10]

11. SAME—CONDITIONAL SALES.

If the condition relative to title is precedent and remains so regardless of subsequent events except right to pass title by suit for the agreed purchase price, it is consonant with a conditional sale; but if the condition relative to title is subsequent, to be ruled by events, and remedies are open to enforce payment of the purchase price with the chattel a security, then it is not a con-

[6]Chattel Mortgages, 11 C. J. § 14 (1926 Anno); [7]Id., 11 C. J. § 16; [8]Id., 11 C. J. § 18; [9]Id., 11 C. J. § 14 (1926 Anno); [10]Id., 11 C. J. § 14 (1926 Anno).

ditional sale but is security in the nature of a chattel mortgage.[11]

12. SALES.

An instrument which by its terms gives to the seller of an adding machine the right, in case of default, to either sue for the amount due, thereby vesting the absolute title in the buyer, or to retake the machine and retain all payments made by the buyer, is a pure conditional sale and not one in the nature of a chattel mortgage.

Appeal from Wayne; Perkins (Willis B.), J., presiding.   Submitted December 4, 1924.   (Docket No. 11.)   Decided April 3, 1925.

Petition by the Burroughs Adding Machine Company against Paul J. Wieselberg, receiver of the Hollywood Sales & Service Company, for the return of a machine.   From an order denying the petition, plaintiff appeals.   Reversed and remanded.

*Stevenson, Carpenter, Butzel & Backus* (*William L. Carpenter,* of counsel), for plaintiff.

*Paul J. Wieselberg, in pro. per.*

*William Van Dyke, amicus curiæ.*

WIEST, J.   The Burroughs Adding Machine Company petitioned the Wayne circuit court to direct the receiver of the Hollywood Sales & Service Company to return an adding machine or pay therefor.   The receiver claims right to the machine because the contract under which it came into the hands of the Hollywood company was in effect a chattel mortgage, and, not having been recorded, the Burroughs company has no lien thereon or right of reclamation.   The circuit judge denied the petition, and the case is here by appeal.

[11]Chattel Mortgages, 11 C. J. § 14 (1926 Anno).

April 6, 1923, and before the receiver was appointed, the Burroughs company and the Hollywood company entered into contract, under which the Hollywood company ordered an adding machine and agreed to purchase the same and pay therefor the sum of $187, with a cash payment of $18.70, the balance in 9 equal monthly payments with interest, title to remain in the Burroughs company until the purchase price was paid in full, taxes to be paid and insurance carried for the benefit of the Burroughs company.    The contract also provided:

"If the undersigned fails to make the aforesaid payments in cash, with interest thereon, or to observe or perform any of the above conditions and agreements by him to be observed or performed, or if the undersigned shall be adjudicated a bankrupt, or if a receiver shall be appointed for the undersigned's business, or if the undersigned shall make an assignment for the benefit of creditors, then the company either (1) may declare the entire sum remaining unpaid hereunder to be immediately due and payable, and elect to sue for the amount due, thereby vesting the absolute title in the undersigned, or (2) it may enter, with or without legal process and using such force as may be necessary, into or upon the premises where the said goods, or any part thereof, may be, or is or are believed to be, and take possession thereof, and thereafter hold them absolutely, free from all claim from the undersigned, and retain all payments made by the undersigned hereunder as and for the reasonable rental of said goods and for the use, wear and tear thereof."    *    *    *

If this instrument constituted a pure conditional sale, and not security in the nature of a chattel mortgage, then the property may be reclaimed from the receiver.    The trial judge denied right of reclamation, on the ground that the instrument was in the nature of a chattel mortgage and, not having been placed of record, the seller was without right to retake from the receiver.    It is said the decisions of this court

relative to conditional sales and conditional sales in the nature of a chattel mortgage are difficult of comprehension and puzzle the profession and perplex the courts, including the circuit court of appeals of the sixth Federal circuit, and we are asked to make plain the distinction between a pure conditional sale and one in the nature of a chattel mortgage.

The principle underlying our decisions is simple enough, but application thereof is sometimes difficult because of language of particular instruments and the acts of parties thereto.  If an instrument presents a case of security in the nature of a chattel mortgage, then it is to be held, when rights of third parties intervene, to come within the law relating to the recording of such an instrument.  The question turns upon whether an instrument, with rights and remedies thereunder, express or implied or by operation of law, provides security for the unconditional payment of an obligation assumed with reference to chattels.  The pure conditional sale gives possession of chattels with the right to ownership upon payment of the agreed price, retaining title in the seller with right of reclamation in case of default or the alternative of passing the title by suit for the purchase price.  The right to retake the property, retain payments made, estimate wear and tear, compute damage and look to the buyer for deficiency in the agreed price is consonant only with remedies under instruments providing for security in the nature of a chattel mortgage; for in such a case the security is but an incident of a debt absolutely due from the buyer to the seller.  As said in *Perkins* v. *Grobben,* 116 Mich. 172, 179 (39 L. R. A. 815) :

"The vendor is not entitled to the title and possession of the property, and to be paid for it also."

The character of the instrument is to be determined from its terms, from a consideration of rights and

remedies stipulated therein or allowed by law as between the parties, and to some extent in the light shed by the circumstances surrounding the transaction. If the seller is not limited to right to retake the property and retain the payments made, but after reclamation may enforce payment of the remainder of the full agreed price, and the instrument is so worded as to permit this to be done, then the courts will recognize the instrument for what it is in fact and law, security in the nature of a chattel mortgage. If the title is retained as security for the payment of the full price and the obligation to further pay is not abated by a retaking of the property and retention of partial payments, then it is not a pure conditional sale but an undertaking in the nature of a chattel mortgage. Instruments giving the seller the rights and remedies of a mortgagee against the buyer and chattels the subject of sale, if rights of third persons do not intervene, but so colored as to be employed in support of a claim of conditional sale only, when rights of third persons do intervene, are *ab initio* instruments in the nature of a chattel mortgage.

If sellers will state in the instruments the limitation of rights and remedies, there will be no difficulty in making classification. It is fair to assume that the seller intends to employ every available remedy open under law, and it is equally fair to adjudicate with such in mind. If the condition relative to title is precedent and remains so regardless of subsequent events, except right to pass title by suit for the agreed purchase price, it is consonant with a conditional sale. But if the condition relative to title is subsequent, to be ruled by events, and remedies are open .to enforce payment of the purchase price with the chattel a. security, then it is not a conditional sale but is security in the nature of a chattel mortgage.

At this point a short review of some of the decisions

of the Federal circuit court of appeals, sixth circuit, and some of this court is apropos. In *Vander Lei* v. *Blakely,* 284 Fed. 516, it was said:

"In our opinion in the *National Cash Register Co. Case,* 283 Fed. 742, filed October 3, 1922, we reviewed the Michigan decisions and our own, bearing on this matter. From them it appears that the question of intent, as shown by the language used in the instrument and perhaps with some aid from the circumstances, is the controlling consideration. If there is no agreement or necessary inference that the debt is to remain payable, even though the property may be reclaimed, then the reservation of title contained in the instrument may take full effect, in spite of the giving of the negotiable promissory note for the debt, and even though the instrument may speak of the title reservation as a 'security' for the debt; while if the contract is that the full debt must be paid even after reclamation, or if the parties have provided for a treatment of the instrument which the law contemplates only with reference to mortgage securities, the inference of intent to pass an absolute title and reserve a lien is unavoidable."

In *Heyman Co.* v. *Buck,* 221 Mich. 225, we construed the instrument as authorizing the seller to declare the whole purchase price due, to reclaim the goods in partial satisfaction of the demand and to look to the buyer for deficiency. Under such construction we held:

"When a sales agreement permits recovery of the sum stipulated to be paid for goods, without passing title, it is consistent only with an absolute sale with reservation of title as a lien to secure payment of the price. *Young* v. *Phillips,* 203 Mich. 566; *National Cash Register Co.* v. *Paul,* 213 Mich. 609 (17 A. L. R. 1416)."

In *Re Ames,* 289 Fed. 209 (sixth circuit), it was said:

"From our study and review of the Michigan decisions, we were led to the conclusion that prior to the

*Paul Case*, 213 Mich. 609 (17 A. L. R. 1416), the existence of an unescapable obligation by the vendee to pay the full purchase price, whether such obligation was evidenced only by the contract, or also by separate negotiable notes, did not of itself transform into a chattel mortgage a formal contract of title reservation. We thought the true criterion was whether there was an intention that the vendor could both keep the title to the property and bring suit for the purchase price, and that, in ambiguous cases, other evidences of intent as well as this might serve to reveal the true character of the transaction.    To say that a positive obligation on the part of the purchaser to pay the full price is inconsistent with a conditional sale is to say that conditional sales are confined to options to buy, and we do not think the Michigan Supreme Court has intended to make that statement."

Absolute liability for the full purchase price may be stipulated and enforced, but title may not be retained, possession reclaimed, and the full purchase price unpaid also be exacted, without having the instrument fall within security in the nature of a chattel mortgage.

There was no intention in the *Paul Case* to extend the holding in *Young* v. *Phillips*, 203 Mich. 566, and kindred cases.    The holdings of this court appear to be understood by the United States district court. In *Re Harmony Theatre Co.*, 298 Fed. 662, it was said:

"So the contract expressly gives the vendor the right to enforce payment of the purchase price without passing title to the vendee.    Under the decisions of the circuit court of appeals of this circuit, as well as those of the Michigan Supreme Court, such a provision in a contract has uniformly been held to give to such contract the legal nature and effect of an absolute sale with reservation of title merely as security for payment of the purchase price;" (citing the Federal and State cases.)

An absolute sale and a conditional sale contract

cannot well cover identical chattels and serve as security in the nature of a chattel mortgage or a pure conditional sale as best suits the vendor under subsequent events.    As stated by the late Justice STONE in *National Cash Register Co.* v. *Paul, supra:*

"It is true that we find present in this contract not only an evident attempt to make an absolute sale, but at the same time an attempt to put the transaction in the form of a conditional sale, so that the vendor can take either position."

Our decisions appear to be within the comprehension of Dean Bogert, draftsman of the uniform conditional sales act, now in force in 29 States, but not in Michigan, for, in mentioning the holdings of this court, he says:

"The Michigan courts distinguish between (1) an *absolute* reservation of title till payment, a transaction which they call a 'conditional sale' and in which the seller may retake the goods on default and rescind the sale or may sue for the price and elect to pass the property to the buyer; and (2) a contract whereby the seller purports to reserve title by way of *security merely,* to enable him to collect the price.    The latter transaction is construed to be a chattel mortgage, an absolute sale followed by the creation of a lien in favor of the seller to the amount of the unpaid portion of the price.    The theory of the uniform act is that the reservation of title in a conditional sale is always 'for security merely' and this means of obtaining security should be called a conditional sale.    Hence the peculiar Michigan view is inconsistent with the uniform act. *Atkinson* v. *Japink* (1915), 186 Mich. 335; *Young* v. *Phillips* (1918), 202 Mich. 480, 203 Mich. 566; *Niman* v. *Story & Clark Piano Co.* (1921), 213 Mich. 397."    Bogert, Commentaries on Conditional Sales, Vol. 2A Uniform Laws, Ann. p. 8.

This points out the difficulty of harmonizing our decisions with those of many other States.    We proceed in accord with the course of the common law in

construing instruments of this nature and apply common-law principles to sales contracts before us to determine whether rights, remedies and liability thereunder require compliance with our law regulating the recording of instruments intended to operate in the nature of a mortgage of goods and chattels.

It is true the theory of the uniform act is that the reservation of title in a conditional sale is always for *"security merely;"* in fact, so true that the uniform act carries its own obligatory recording provisions. It is not at all surprising that our decisions are inconsistent with the uniform sales act. The prime purpose of the uniform act is to regulate such contracts and change the common-law force and effect thereof, to define rights thereunder and fix remedies with certainty. To make our decisions accord with the uniform act, without such an act in force in this State, would be incongruous, destroy the recording provision now applicable and not bring the recording provisions of the uniform act in play.

Dean Bogert also states:

"By declaring the conditional sale nothing but a chattel mortgage in disguise and applying to it the body of rules already built up for chattel mortgages, much inconvenience and expense would have been saved, and the result would ultimately have been the same as that achieved by declaring the conditional sale a distinct institution and then proceeding to define and limit it. Statutes and decisions regarding conditional sales have had one general purpose and effect, namely, that of giving to the conditional sale the same incidents with respect to recording, foreclosure, and other matters, that attach to chattel mortgages. If there be any truth in the suggestion sometimes made, see, for example, *Humeston* v. *Cherry* (1880), 23 Hun (N. Y.), 141, 142, that the conditional sale was framed as an evasion of the chattel mortgage laws regarding recording and protection of the buyer's equity, there was an additional reason for declaring conditional sales to be chattel mortgages." Bogert, Com-

mentaries on Conditional Sales, Vol. 2A Uniform Laws, Ann. (1924) p. 59.

A reading of our decisions will disclose that in the application of the rule we have determined the intent of the instrument in each case from the language employed, the rights and remedies granted, or open under the law to the vendor against the vendee and the chattels, and have considered concurrent and subsequent acts of the vendor indicative of the true purpose of the contract.

The sales instrument in the suit at bar follows our holdings, in case of exercise of the first alternative by the vendor, and, limiting the right of the vendor to the sole remedy stipulated in the second alternative, as we must under our decisions, saves it from security in the nature of a chattel mortgage. The learned circuit judge was in error in denying the petition, and the action so taken is set aside and the case remanded with direction to the circuit to enter an order for the return of the property.

The Burroughs company will recover costs against the receiver of the Hollywood company.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.