## In re THOMAS–DAGGETT CO.

## Petition of MARTIN.

District Court, W. D. Michigan, S. D. January 10, 1927.

**1. Bankruptcy ⬤➞184(2⅛)—Chattel mortgages ⬤➞6—Sprinkler equipment sale held absolute sale with chattel mortgage back, void against trustee for failure to file.**

Contract evidencing sale of automatic sprinkler equipment prior to bankruptcy of buyer, reserving to vendor remedy for balance of purchase price and lien against real estate, *held* to result in absolute sale with security in nature of chattel mortgage, and void as against trustee in bankruptcy for failure to observe state laws relative to filing chattel mortgages.

**2. Chattel mortgages ⬤➞6—Contract by vendor seeking to secure secret lien should be clear, and such agreement should be construed against vendors' right to assert lien.**

As respects construction as chattel mortgage or conditional sale contract, if vendors intend to enjoy protection of their secret lien as against innocent purchasers and creditors, contract should speak so clearly that it is removed from field of doubt, and such agreement should be construed most strongly against right of vendor to assert his claimed lien.

**3. Chattel mortgages ⬤➞6—Contract reserving secret lien should not be construed as conditional sale contract, unless intention and rights and remedies are clearly consistent therewith.**

In absence of a specific reservation of title, contract seeking to secure protection of secret lien should not be construed as a conditional sale contract, unless intention of parties as expressed, and rights and remedies therein provided, are clearly consistent with such construction.

In Bankruptcy. In the matter of the bankruptcy of the Thomas-Daggett Company. On petition to review an order of the referee denying the petition of Charles W. Martin to reclaim automatic sprinkler equipment installed in buildings belonging to bankrupt. Order affirmed.

Laurence W. Smith and Fred N. Searl, both of Grand Rapids, Mich., for petitioner.

Clapperton & Owen, of Grand Rapids, Mich., for trustee.

Travis, Merrick, Warner & Johnson, of Grand Rapids, Mich., for Grand Rapids Trust Co.

RAYMOND, District Judge. This matter is before the court upon petition to review an order of the referee in bankruptcy, denying the petition of Charles W. Martin to reclaim automatic sprinkler equipment installed prior to bankruptcy in buildings belonging to bankrupt by Hugh W. Clayton under an agreement which petitioner avers is a title-retaining contract. Shortly after the date of the contract it was assigned by Hugh W. Clayton to the petitioner. The question presented is whether the contract is one of conditional sale, reserving the title in the vendor until payment of the purchase price, or one of absolute sale, with security in the nature of a chattel mortgage. It is conceded that, if it is the latter, its provisions relative to retaking possession of the property by the vendor upon nonpayment of the agreed price are without validity as against the trustee in bankruptcy, for the reason that the laws of Michigan pertaining to the filing of chattel mortgages were not observed.

The question here involved is one which frequently has been before the state and federal courts, and the varying tests which have been from time to time suggested by the courts, coupled with the ingenuity of those who have so framed their contracts that the ascertainment of the real intention of the parties is a matter of great difficulty, has resulted in some confusion. The reservation of inconsistent rights and remedies, and the apparent intentional omission of apt words to make clear the real purpose of parties to agreements of this nature, have become common. The contract here under consideration is an example of the omission of the important and usual provisions in such contracts. It contains no agreement either to purchase or to sell presently or at a future time. It contains no statement which can be clearly construed as a reservation of title. There is no agreement to transfer title when the property is fully paid for. Omission of these fundamental provisions in an agreement which, in other particulars, appears to have been prepared with scrupulous care, is important in ascertaining its legal effect.

The salient terms of the contract, which bears date April 14, 1924, were as follows:

The vendor, Hugh W. Clayton, agreed to have installed in buildings of the Thomas-Daggett Company a sprinkler equipment and to furnish all labor and materials therefor, the Thomas-Daggett Company agreeing to pay to the vendor the sum of $22,700 in five annual payments. The conspicuous provisions which bear upon the question involved are as follows:

"(8) That, in case the property is damaged or destroyed by fire, there shall be paid to the party of the first part, or to his assigns, at his or their option, out of the proceeds of the insurance by the insurance companies, all amounts due or to become due hereunder to the party of the first part, whether then evi-

denced by notes or otherwise, with the same discount as hereinafter provided in case of payment of notes before expiration of contract, and also that, in case the party of the second part shall sell, mortgage, or otherwise convey or dispose of said real estate or premises, or default in any of the payments herein provided for, or in the payment of any of the notes given as evidence of the amounts due hereunder, or become bankrupt, or go into receivers' hands or the hands of a trustee for creditors, or violate any of the conditions of this contract, any and all deferred payments hereunder, whether then evidenced by notes or otherwise, shall, at option of the party of the first part or other holder of such indebtedness, mature and become due and payable, and also that, in the exercise of any of the rights in this contract given to the party of the first part in case of default by the party of the second part, the party of the first part shall receive, in addition to the amounts due, his expenses including reasonable attorney's fees."

"(10) That the sprinkler equipment and everything entering into same shall be, continue, and remain personal property, and shall not become a part of the realty, and that the party of the first part shall have a first lien upon the materials and equipment furnished until all the payments under this contract, whether evidenced by notes or otherwise, have been made, together with the right to enter upon the premises and remove the said materials and equipment at his option for any failure of the party of the second part to comply with any of the terms or conditions hereof, or upon the failure of the party of the second part to pay when due any of the notes evidencing any part of the indebtedness or payments to be made hereunder, the cost of such removal to be paid by the party of the second part, and that no alterations or additions to the sprinkler equipment shall be made during the life of this contract except by mutual agreement between the parties hereto.

"(11) That should the installation of the equipment be prevented before commencement, or the work be discontinued after commencement, by or because of fire or any other cause not the fault of the party of the first part, then there shall become immediately due and payable from the party of the second part to the party of the first part a sum equal to the value of the material, labor, and services theretofore done, furnished, or contracted for in connection with said work by the party of the first part.

"(12) That the amounts to be paid under this contract, whether evidenced by notes or otherwise, shall also be, continue, and remain a lien upon all of the above-described real estate as security for the prompt and punctual payment thereof to the party of the first part until the same are fully paid, and the party of the second part promises and agrees to pay all taxes and assessments levied against the same, and on the acceptance of the equipment as herein provided the party of the second part agrees to execute and deliver to the party of the first part its promissory notes payable in Chicago with exchange, to be secured by this contract for the respective payments, with interest after due at six per cent. (6%) per annum.

"(13) That the liens, remedies, and securities herein given to the party of the first part are cumulative, and that the exercise or attempted exercise of any one right or remedy, or the enforcement of the attempted enforcement of any lien or security, shall not waive, bar, or release such right or remedy nor any other right or remedy hereunder, or any other lien or security hereunder, and that all rights, remedies, and securities herein provided shall continue and remain in full force and effect until the full payment of all amounts due hereunder, both principal and interest, and whether evidenced by notes or otherwise.

"It is hereby expressly understood and agreed that if, through any default on the part of the buyer in performing the covenants herein, the seller shall deem it necessary or expedient to invoke any of the remedies herein reserved in order to collect the amount due, he shall, in addition to such amounts, with interest and costs, be entitled to collect 10 per centum (10%) on the said sum and interest from the buyer as liquidated attorney's fees."

The contract is duly witnessed and acknowledged, and attached thereto is an assignment, bearing date May 12, 1924, in the following language:

"Assignment of Sprinkler Equipment Contract.

"State of Illinois, County of Cook—ss.

"In consideration of five ($5.00) dollars in hand paid, I hereby sell, assign, transfer, and set over to Charles W. Martin, of Omaha, Nebraska, and his successors and assigns, all my right, title, and interest in the sprinkler equipment contract between the undersigned and Thomas-Daggett Company, of Grand Rapids, Michigan, dated at Grand Rapids, Michigan, April 14, 1924, giving and granting unto Charles W. Martin, his successors and

assigns, full power and authority to collect, receive and give acquittance for any sum or sums due or to become due under said contract, and in my name or otherwise to prosecute and withdraw any suits or proceedings at law or in equity therefor, assuming and fully releasing me from any and all liability under said contract.

"[Signed] Hugh W. Clayton.
"Witness: [Signed] G. V. Clayton.

"Subscribed and sworn to before me this 12th day of May, 1924.

"[Signed] Mabel Grant, Notary Public.
"Comm. expires 8/28/26."

The decisions of the Circuit Court of Appeals of the Sixth Circuit and Michigan Supreme Court have been reviewed so frequently that reference to but a few cases is necessary. The language of the Circuit Court of Appeals in the case of Vander Lei v. Blakely, 284 F. 516, and referred to by the Michigan Supreme Court in the case of Adding Machine Co. v. Wieselberg, 230 Mich. 15, 21, 203 N. W. 160, 162, is believed to furnish the proper basis for solution of the question presented. It was there said:

"In our opinion in the National Cash Register Co. Case, 283 F. 742, filed October 3, 1922, we reviewed the Michigan decisions and our own, bearing on this matter. From them it appears that the question of intent, as shown by the language used in the instrument and perhaps with some aid from the circumstances, is the controlling consideration. If there is no agreement or necessary inference that the debt is to remain payable, even though the property may be reclaimed, then the reservation of title contained in the instrument may take full effect, in spite of the giving of the negotiable promissory note for the debt, and even though the instrument may speak of the title reservation as a 'security' for the debt; while if the contract is that the full debt must be paid even after reclamation, or if the parties have provided for a treatment of the instrument which the law contemplates only with reference to mortgage securities, the inference of intent to pass an absolute title and reserve a lien is unavoidable."

In applying the tests suggested in that case to the present contract the provisions of paragraph 13 (above quoted) become important. Among the rights, liens, remedies, and securities provided for by the contract, and which are expressly stated therein to survive the exercise of any right or remedy, are the obligation to pay the balance of the purchase price, a first lien upon materials and equipment furnished, the right to enter the premises and remove materials and equipment at the option of vendor upon default, the provision for acceleration of payments upon default, a lien upon all of the real estate upon which the buildings of bankrupt are located (a legal description thereof being contained in the contract), and the provision for the payment of ten per cent. on unpaid balances as liquidated attorney's fees upon enforcement of any of the remedies reserved. Among the obligations resting upon the purchaser were to protect the interests of vendor by fire insurance policies having indorsed thereon, "Loss, if any, payable to Hugh W. Clayton, or assigns, as his or their interest may appear," and to pay all taxes and assessments upon the real estate therein described.

It is noticeable that the only provision of the contract which might possibly be construed as indicating an intention to reserve title is that which gives to the vendor the right to enter upon the premises and remove materials and equipment upon default. This provision is one commonly employed in the forms of chattel mortgages in general use in Michigan, and is in no way inconsistent with an intention to pass title, reserving merely a lien as security. As previously stated, there is no provision in the contract which provides for the transfer of title at any time, even upon full payment of purchase price. A consideration of the contract leaves slight doubt of the intention of the parties that the title should pass to bankrupt at some time, and in the absence of express language in the contract to the contrary it is fair to assume that the parties intended that the title should pass at the time of delivery. This intention is indicated, not only by this noticeable omission, but also by the express reservation of a lien for the purchase price upon the sprinkler equipment, as well as upon the real estate. The insurance clause above quoted indicates an intention that the vendee shall insure the property as his own, with the standard mortgagee clause attached to the policy. It is also noticeable that the assignment of May 12, 1924, does not purport to transfer title to property, but merely to assign the vendor's interest in the contract.

[1] It seems apparent that, even though the reservation by the vendor of the right to reenter and retake possession were to be considered as a sufficient expression of an intention to reserve title, the provisions of the thirteenth paragraph, which in legal effect reserves to the vendor, after retaking possession, the right to enforce its remedy for the balance of the purchase price and the right to enforce a lien against the real estate, are direct-

ly repugnant to the legal theories upon which alone, under the decisions referred to, reservation of title contracts may be sustained. The contract clearly contemplates remedies which survive reclamation. The expressed intention on the part of the vendor to reserve these rights brings the case within the rule announced in the Vander Lei Case, and the conclusion seems irresistible that the rights reserved by the vendor are consistent only with the construction that the contract resulted in an absolute sale with security in the nature of a chattel mortgage, and therefore void as against the trustee in bankruptcy.

[2, 3] If vendors intend to enjoy the protection of a secret lien as against innocent purchasers and creditors, the contract should speak so clearly that it is removed from the field of doubt, and if, by the omission or shuffling of words, they seek to secure the advantages incident to the construction of the instrument as either a chattel mortgage or conditional sale contract, as ultimately will be most advantageous, such an agreement should be construed most strongly against the right of the vendor to assert his claimed lien. Certainly, in the absence of a specific reservation of title, such contract should not be construed as a conditional sale contract, unless the intention of the parties as therein expressed and the rights and remedies therein provided are clearly consistent with such construction.

It follows that the order of the referee must be, and it hereby is, affirmed.