In re BERGHOFF PRINTING CO.

HARRIS–SEYBOLD–POTTER CO. v. WHITELAW.

No. 6044.

Circuit Court of Appeals, Sixth Circuit.

Dec. 13, 1932.

494

C. H. Hatch, of Detroit, Mich. (Henry B. Graves, of Detroit, Mich., on the brief), for appellant.

F. E. Kenney, of Detroit, Mich. (Lawhead & Kenney, and Frank Lawhead, all of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

On March 3, 1928, the Berghoff Printing Company, a Michigan corporation, entered into a written contract with the Harris-Seybold-Potter Company, appellant, for the purchase and installation of two printing presses. The purchase price was $16,346. Of this amount $346 was to be paid upon the installation of the presses and the remainder in forty monthly installments of varying amounts beginning six months after the installation. The contract provided that title to the presses should remain in the Harris Company until the purchase price was fully paid, and that, if it elected to have the deferred payments secured by a chattel mortgage on the presses, the printing company would properly execute and file such mortgage and thereby terminate the reservation of title.

The presses were delivered on June 21, 1928, and their installation was completed in about two weeks. On July 18 the Harris Company elected to secure the deferred payments, and tendered for execution by the printing company a chattel mortgage and forty trade acceptances aggregating $16,000. The mortgage and a number of the acceptances were signed by the printing company. They were not delivered, but were retained by the company to submit to its attorney. Thereafter Joseph J. Berghoff, secretary and treasurer of the company and owner of 498 of the 500 shares of its capital stock, was appointed receiver for the company by the state court. On August 20, 1928, the Harris Company filed a petition in the receivership case setting out the facts concerning the undelivered mortgage and trade acceptances. Upon the filing of answer thereto by the printing company and the receiver, the court ordered the receiver to pay the down payment of $346 and to deliver for and on behalf of the printing company the chattel mortgage and trade acceptances. On the same day Berghoff delivered to the Harris Company the twelve acceptances which had theretofore been signed, and signed and delivered twenty-eight additional acceptances and a chattel mortgage. All of these documents were dated July 18, 1928, and signed "Berghoff Printing Co. by Joseph J. Berghoff, Sec'y. Treas." The mortgage was filed in the office of the city clerk on the following day.

Subsequently to the execution of the mortgage and acceptances, certain creditors of the printing company petitioned to intervene and have the receivership suit dismissed. On August 31, 1928, the court dismissed the suit, but on September 7, 1928, another receivership proceeding was filed against the company, and Donald Whitelaw was appointed its receiver. Later involuntary proceedings in bankruptcy were instituted, and on November 7, 1928, the company was adjudged a bankrupt. In the bankruptcy proceedings the petitioner made demand for a return of the presses, and, upon noncompliance therewith, filed a petition for reclamation, which was denied by the court below.

Of the numerous questions argued, we find it necessary to deal only with the character and scope of the contract of March 3, 1928, accepting the appellee's contention that the decision below rightly determined that the mortgage executed as of July 18, 1928, by Berghoff as secretary and treasurer, was void and of no effect. The decisions of the Supreme Court of Michigan recognize the distinction between a conditional sale with title retained in the seller and an absolute sale with a mortgage back. In re Parkstone Apartment Co., 243 Mich. 401, 405, 220 N. W. 780. Where the instrument specifically reserves title in the seller, the test of this distinction, under the Michigan cases, is whether the seller can retake the goods and then sue for the deficiency in the sale price. If he can do both, the instrument is a mortgage; but, if upon the retaking he can do no more than sue for the rental value of the property or nonperformance of the contract, then it is a conditional sale with title retained in the seller until he elects to sue for the purchase price. Burroughs Adding Machine Co. v. Wieselberg, 230 Mich. 15, 203 N. W. 160; In re Central States Freight Corp. (D. C.) 46 F.(2d) 545, 547, 548; Vander Lei v. Blakely, 284 F. 516 (C. C. A.

6); Petition of National Cash Register Co., 283 F. 742 (C. C. A. 6); In re American Steel Supply Syndicate (D. C.) 256 F. 876.

Pertinent provisions in the contract of March 3, 1928, are:

"Title to and right of property in machinery and equipment to remain in you until purchase price and any notes or acceptances given therefore [therefor] are fully paid in cash, with the right to resume possession upon our default in any payment or provision hereof.

"Upon default in the payment of any of said notes or acceptances all those remaining unpaid, shall immediately become due and payable, notwithstanding the terms hereof, unless such acceleration is prohibited by law. * * *

"In case of default in the payment of the amount payable, or any part thereof, or upon the violation of any of the terms and conditions hereof, you shall have the right to enter the premises where said machinery may be located and take possession of and remove the same, without legal process and at the expense of the purchaser, and all payments made thereon, or so much thereof as shall be authorized by law, shall, at your election, be forfeited to you as agreed and liquidated damages."

Construing these provisions in the light of the decided cases, it seems plain that the appellant had alternative remedies in case of default. It could either pass title and sue for the full amount of the indebtedness, or reclaim the goods; but it could not do both. The contract is almost identical with the one considered by this court in Re Ames, 289 F. 208, 210, except that that contract specifically provided that in case of default on the part of the buyer, the seller might at his option either "rescind" his contract or affirm the same and sue as for a breach thereof, whereas in this one it is provided that, in case of default, the seller shall have the right to reclaim the property and take possession of it, and that all payments made thereon, or so much thereof as is authorized by law, shall at his election be forfeited to him as agreed and liquidated damages. It was held in the Ames Case that the "rescission" contemplated by the contract there involved was "reclamation," and that neither the acceleration clause in the contract nor the option given the seller to affirm the sale and sue for the purchase price was inconsistent with a title retaining contract. The only difference, therefore, in the options given under the two contracts, is that it was provided in the Ames contract that, upon reclamation by the seller, all sums theretofore paid on the contract by the buyer should be treated as liquidated damages for breach of the contract and "as a fair rental value for the property," while upon reclamation under the instant contract the seller is given the right to elect so to treat such payments or to resort to other remedies, such as a suit for rents or breach of the contract. This right of election is entirely consistent with the retention of title in the seller. McBryan v. Universal Elevator Co., 130 Mich. 111, 115, 89 N. W. 683, 97 Am. St. Rep. 453. The decision of this court in Martin v. Michigan Trust Co., 23 F. (2d) 609, is not contra.

Nor does the clause subjecting the machinery to a lien for insurance premiums paid by the seller convert the instrument into a chattel mortgage. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 273, 36 S. Ct. 50, 60 L. Ed. 275. In the Ames contract there was a provision authorizing the seller to pay insurance and add the "amount thereof to the amount otherwise payable by the buyer"; and, although the contract did not specifically provide that the amount paid by the seller should become a lien on the property, its stipulated inclusion in the amount due as payments gave it a lien status upon the election of the seller to pass title and sue for the purchase price. Provisions for liens in conditional sale contracts, though seemingly inconsistent with title reservation, must be considered and, if possible, reconciled with conflicting provisions so as to give effect to the dominant purpose of the contract. John Deere Plow Co. v. Mowry, 222 F. 1, 5 (C. C. A. 6). When the insurance provision in this contract is read in the light of the express reservation of title and the giving of the seller an option to secure the deferred payments by chattel mortgage, it is to be construed, we think, as meaning that, in the event the seller exercised its option to secure the deferred payments, then the insurance paid by it should become a lien with such deferred payments upon the property.

It appears, therefore, that the contract of March 3, 1928, was a conditional sale contract in which title to the property was retained in the petitioner. The remaining question is whether it was terminated by the action of the seller and buyer on July 18, 1928. The court below held that the election of the seller at that time to take a chattel mortgage and the signing of a mortgage and twelve trade acceptances by the buyer terminated the contract. This conclusion, in

our opinion, is erroneous. The contract provided: "If you [seller] elect to secure deferred payments by chattel mortgage on said machinery and equipment, same will be properly executed, filed or recorded by us [buyer] and all provisions herein, for reserving title in you [seller] shall cease and terminate upon so giving said mortgage." This language could only mean that the contract was to terminate upon the execution and filing or recording by the seller of a chattel mortgage. It does not mean that it would terminate upon the election of the Harris Company to take such a mortgage. Before the mortgage could be made effective as between the parties, it was necessary that it be executed and delivered. It was never delivered and never became effective. Before it could supersede the prior agreement, it was necessary, by the terms of the agreement, that it be not only executed, but filed or recorded. It may be that the delivery to and acceptance by the seller of a legally executed mortgage would be a compliance with the requirement that the mortgage be "filed or recorded," but that was not done, and until it was done title could not pass under this provision. It is not important, in our view, that the petitioner alleged in its petition that it elected, in accordance with the contract, to accept the chattel mortgage and trade acceptances executed by Berghoff as secretary and treasurer, or that it relied upon that mortgage in the court below to reclaim its property or assert a lien thereon for its debt. The validity of the mortgage was challenged by the trustee, and the trial court rightly held that it was not a valid mortgage. Having so held, and the undelivered mortgage not having terminated the contract of March 3d, the latter agreement remained in effect. It was not essential to its validity that it be filed of record. Contractors' Equipment Co. v. Reasner, 242 Mich. 589, 594, 219 N. W. 713.

The order of the District Court is reversed.