*In re* PETITION FOR DISSOLUTION OF WILLYS-DETROIT, INC.

C. I. T. CORPORATION *v.* WISEMAN.

CHATTEL MORTGAGES—TRUST RECEIPTS—AUTOMOBILES—RECORDING —SUBSEQUENT CREDITORS.

> In transactions whereby manufacturer sold and invoiced automobiles to distributor, executed bills of sale to finance company which advanced amount of invoices to manufacturer, distributor accepted time drafts in invoice amount payable to finance company which, in turn, executed trust receipts permitting possession to be in distributor, trust receipts and other papers *held*, to effect chattel mortgages upon the property involved, which, not being recorded, were void as against subsequent creditors and chattel mortgages in good faith as the Supreme Court looks to the substance rather than the form of the transaction (3 Comp. Laws 1929, § 13424, as amended by Act No. 18, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 129, Pub. Acts 1935).

Appeal from Wayne; Miller (Guy A.), J. Submitted January 13, 1939. (Docket No. 89, Calendar No. 40,348.) Decided March 9, 1939. Rehearing denied April 25, 1939.

In the matter of the petition of G. Roy Williams and others for the dissolution of Willys-Detroit, Inc., a Michigan corporation. Petition by the C. I. T. Corporation, a Maryland corporation, to obtain from the receiver, Walter L. Wiseman, the possession of certain motor vehicles. Petition denied. Plaintiff appeals. Affirmed.

*Frederick McGraw,* for plaintiff.

*Edmund A. Cummiskey,* for defendant.

CHANDLER, J. The record in this case contains the following stipulation as to the facts involved in the controversy:

"The following facts are stipulated by C. I. T. Corporation, reclamation petitioner, and the temporary receiver:

"C. I. T. Corporation, the reclamation petitioner, is engaged in financing automobile paper. Willys-Detroit, Inc., was a distributor of Willys automobiles. Willys-Overland, Inc., is the manufacturer.

"An order previously entered herein disposed of all automobiles except 14 covered by trust receipt transactions.

"Of such transactions, one Willys 1938 pick-up, Serial No. 79560, Motor No. 79777, was not in the possession of the distributor at the time the temporary receiver was appointed, August 16, 1938, so the decision on the reclamation petition shall not apply thereto.

"The 13 cars covered by trust receipts were released by this court to petitioner upon filing its bond in the amount of $3,000, conditioned upon petitioner paying to the temporary receiver or his successors and assigns the amounts of any claims and liens that may be adjudged to be superior to, or have priority over, petitioner's rights therein.

"There are creditors who extended credit to the distributor, after the execution of the trust receipts, the amounts of which are to be determined by the court from claims filed by said creditors, and allowed by this court after notice to petitioner, and petitioner shall have an opportunity to object to allowance of any claim so filed. If such creditors are entitled to priority over petitioner, such prior claims shall be satisfied from the bond which was substituted in lieu of the cars.

"The cars came into the distributor's possession in this manner:

''The distributor ordered the cars from the manufacturer which made out its invoices to the distributor and attached them to bills of sale to petitioner, executed in the following form:

'' 'Sold by Willys-Overland Motors, Inc.,
Toledo, Ohio,
To
C. I. T. Corporation

'' 'Know all men by these presents, that the undersigned for valuable consideration, does hereby grant, sell, transfer, and deliver unto C. I. T. Corporation (grantee) the following goods and chattels described below: (describing cars)

'' 'To have and to hold all and singular the said goods and chattels to said grantee, its successors and assigns. The undersigned covenants with said grantee that undersigned is the lawful owner of said chattels; that they are free from all incumbrances; that the undersigned has a good right to sell the same; that undersigned will warrant and defend same against the lawful claims and demands of all persons.

'' 'In witness whereof, the undersigned has hereunto set its hand and seal this 15th day of Oct. 1937.

'' 'WILLYS-OVERLAND MOTORS, INC.
By: H. C. KRUSE.'

''Petitioner prepared time drafts attached to trust receipts in the form of exhibits 'J' to 'U' inclusive, filed as a part of the reclamation petition; the time drafts are payable to petitioner in the full amount of the invoices, drawn on the distributor, bear the typewritten signature of the manufacturer, as shipper, and have the acceptance of the distributor indorsed on the face thereof; and the trust receipts are signed by the distributor.

''Petitioner delivered its check for the full amount of the invoice prices to the manufacturer and received from the manufacturer bills of sale with invoices attached. It received from the distributor the signed trust receipts and accepted time drafts. Pursuant to this arrangement the distributor received the cars to hold in accordance with the provisions of the trust receipts. This 'floor plan accommodation' or trust receipt type of transaction has been carried out between the parties since November 17, 1936.

"None of the instruments in question were filed with the register of deeds for Wayne county, Michigan, the place of residence of the distributor, and the place where said chattels were kept.

"The only retail sales by the distributor were separately financed by petitioner under written contracts between the distributor and the purchaser, and such contracts were simultaneously assigned in writing to petitioner by the distributor.

"In no case of sales by the distributor at wholesale to dealers was the written consent of petitioner demanded or received. Such sales were promptly reported and the proceeds accounted for by the distributor to petitioner, with the exception of the Willys pick-up heretofore referred to. Disposition of that car appears to have been made within a few days prior to the receiver's appointment.

"Upon the appointment of a temporary receiver, C. I. T. Corporation filed this reclamation petition.

"The sole question raised by the petition and answer is whether or not these transactions constitute security in the nature of a chattel mortgage and are void as to subsequent creditors under our recording acts, 3 Comp. Laws 1929, § 13424, as amended (Stat. Ann. § 26.929)."

The following is a copy of the trust receipt referred to in the stipulated facts as exhibits 'J' to 'U,' inclusive:

"Received from C. I. T. Corporation (hereinafter termed C. I. T.) each of the chattels described on the reverse hereof, complete with all standard attachments and equipment, in consideration whereof we agree, at our expense, to hold said chattels, including any substituted parts, in trust for C. I. T. as its property, and agree to return the same on demand in good order and unused but with liberty to us to exhibit and, the written consent of C. I. T. having first been obtained, to sell the same for its account for cash not less than, as to each chattel, the minimum

sale price (the value thereof) set forth as to the respective chattel on the reverse hereof, and we further agree in the case of such sale to hold in trust for C. I. T. the proceeds separate from our funds and immediately hand such proceeds to C. I. T. without expense or cost to C. I. T.   C. I. T. may at any time cancel this trust and repossess itself of said chattels or the proceeds thereof.

"We further agree to keep a separate account of all chattels delivered to us under this or any like receipt and of the proceeds thereof when sold, to report any sale to C. I. T. immediately after the same is made, and to furnish to it on demand a true and complete report for the preceding month.   We will also permit C. I. T., or its duly accredited representatives, to examine our books and the chattels in our possession at all reasonable times during business hours.

"Unless we have arranged with C. I. T. ourselves to provide insurance, C. I. T. shall, during the entire time said chattels are held hereunder, keep same insured against loss by fire and theft, and in the event of our failure to redeliver the same on demand we shall, until redelivery thereof, pay as damages for detention for each month or portion thereof after demand one per cent. of said sale price.

"We further agree to pay all taxes, costs, charges, expenses and disbursements, including a reasonable attorney's fee (15 per cent. of sale price of said chattels, if permitted by law) should C. I. T. find it necessary to protect its property in same by legal proceedings involving the employment of an attorney at law, and that the waiver of any default shall not operate as a waiver of subsequent defaults, but all rights hereunder shall continue notwithstanding any one or more waivers.   We acknowledge receipt of a true copy of this agreement, which shall be construed according to the laws of the State of New York.

"The chattels above referred to are listed on face of this form."

On the reverse of said receipt, appears the following:

"Make———; Model Number———; Serial Number———; Motor Number———; Minimum Sales Price———.

"*Total———.

"*(Total must agree with amount of Time Draft)

"(Town) Detroit, (State) Michigan, (Date) 4/8/1938.

Willys-Detroit, Inc. {Trustee<br>
(Dealer Signs Here) {Bailee<br>
By—————————

"(Witness)          (Owner, Partner or Officer)

The trial court, in denying the reclamation petition, held in substance that the case of *Motor Bankers Corp.* v. *C. I. T. Corp.*, 258 Mich. 301, was controlling of the instant case; and that the slight variations in the trust receipt involved in the present suit from the receipt involved in the *Motor Bankers Corporation Case* did not change the fundamental nature of the transaction.

The court found that the transaction was one by which the petitioner advanced to the Willys-Detroit, Inc., the invoice price of the cars in question, and as security for the repayment of such advancements received the legal title of those cars; that it advanced the funds several days before any obligation arose on the face of the documents on the part of the Willys-Detroit, Inc., to pay; and that on the same day that the bills of sale to the petitioner were executed by the manufacturer, the latter invoiced the cars covered thereby to the Willys-Detroit, Inc. He concluded that petitioner would not have advanced the money had not these cars already been sold to the Willys-Detroit, Inc., and that the transaction was not a sale by petitioner to said company but was in effect a loan or advancement made by petitioner for the

purpose of financing a purchase already made by the distributor from the Willys-Overland, Inc., the manufacturer. He further concluded that the trust receipt was in effect a chattel mortgage, and not having been filed or recorded as required by the provisions of 3 Comp. Laws 1929, § 13424, as amended by Act No. 18, Pub. Acts 1934 (1st Ex. Sess.), and Act No. 129, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 13424, Stat. Ann. § 26.929), was void as against subsequent creditors or chattel mortgagees. We are in accord with the findings and conclusions of the trial court as to creditors of the mortgagor, and subsequent purchasers or mortgagees in good faith.

Appellant contends that the decision in *Motor Bankers Corp.* v. *C. I. T. Corp., supra,* is founded upon the following language to be found therein:

"Under our holdings a trust receipt, accompanied by the obligation of the receiptor to pay an agreed price for an automobile, possession of which is changed, and which permits suit upon the obligation accompanying the trust receipt or the retaking and resale of the car, with application of proceeds in reduction of obligation to pay and right to hold the receiptor for the balance, is security in the nature of a chattel mortgage, and if not filed as such, under our recording laws (3 Comp. Laws 1929, § 13424), is void as against subsequent purchasers or mortgagees in good faith. *Burroughs Adding Machine Co.* v. *Wieselberg,* 230 Mich. 15; *Nelson* v. *Viergiver,* 230 Mich. 38."

On the contrary, we believe the basis for the decision of the cited case is to be found in the following statement contained therein:

"We consider the acts of the distributor, the dealer, and the defendant in construing the trust receipt, and we decline to split the transaction and hold that it was less than security in the nature of a chat-

tel mortgage because the dealer accepted the time draft, and executed the trust receipt to defendant, and such papers, along with the bill of sale of the automobile, were turned over to defendant.

"We have examined, but need not review, cases from other jurisdictions, for we have established our own rule with reference to instruments in the nature of a chattel mortgage."

The language of the trust receipt involved in the *Motor Bankers Corporation Case* and that involved in the instant case is, with certain exceptions, practically identical. In the former, the following provisions are to be found which have been omitted from the receipt involved herein:

"The acceptance of time draft in the above amounts shall not be effective to terminate this trust.

"In the event of our insolvency, suspension or failure to pay the acceptance of even date, or our breach of this trust, all acceptances due from us to C. I. T. shall immediately become due and payable.

"And agree that C. I. T. may sell said motor vehicle and apply the proceeds to advances made for our account and we agree to pay the balance if any."

These slight changes were evidently made by petitioner for the purpose of evading what appeared to it to be the effect of the language which is claimed to have been the basis of the *Motor Bankers Corporation Case*.

Looking to the substance rather than the form of the transaction, we hold that there is no difference in the status of the parties and the legal questions involved in the two cases.

We cannot more clearly express our attitude toward transactions of this nature than by quoting with approval the following from *Root* v. *Republic Acceptance Corp.*, 279 Pa. 55 (123 Atl. 650):

"The complicated dealings between many of those trafficking in, and loaning money on, automobiles have reached a point where the courts must strip transactions of their pretenses and look at them as they really are, with the camouflage of papers giving a similitude of the passing of title removed, or they will be dealing with fictions instead of facts. Those who buy and sell, bail and loan money on motor vehicles must be given to understand that the realities of their transactions will be sought for by the courts; they will look through the screen of paper titles to ascertain what was the real situation.''

We affirm the order of the trial court denying appellants reclamation petition, with costs to appellee.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, and MCALLISTER, JJ., concurred. NORTH, J., took no part in this decision.