CASE 6—ACTION TO ENFORCE CHATTEL MORTGAGE—SEPT. 25.

# Cin. Leaf Tob. Warehouse v. Combs & Others.

APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. REVERSED.

CHATTEL MORTGAGES—UNCERTAINTY AS TO AMOUNT—NOTICE TO CREDITORS—SEPARATE WRITINGS CONSTRUED TOGETHER—LIEN AS BETWEEN PARTIES—ASSIGNEE FOR CREDITORS AS PURCHASER FOR VALUE.

Held: 1. A chattel mortgage reciting that it was executed to secure "a certain sum of money" advanced to the mortgagor under a contract entered into on a day named, and that a note was executed therefor, is so uncertain as to amount that it does not, though recorded, operate as constructive notice to purchasers or creditors, but, when read in connection with the contract and

note referred to, which were not recorded, but which show the exact amount advanced, it creates a lien as between the parties, and is to be treated as an unrecorded mortgage.

2. An unrecorded mortgage is valid as against the mortgagor's assignee for the benefit of creditors, any equity enforceable against the assignor being equally enforceable against the assignee.

SIMRALL & GALVIN AND THORNTON & KERR FOR APPELLANT.

(No prief in record.)

MORTON & DARNALL, ATTORNEYS FOR APPELLEES.

### POINTS AND AUTHORITIES.

(1) A mortgage to secure an existing ascertained debt, which fails to state the amount thereof, is not a recordable instrument, and therefore, is inoperative and void as to the creditors of the mortgagor, or an assignee for the benefit of such creditors. Sec. 496 Ky. Stats.; sec. 74 and 84, Ky. Stats.; sec. 2358 Ky. Stats; Pearce, &c., v. Hall, 12 Bush, 209; Morris v. Murray, 82 Ky., 44; Thompson v. Thompson, 16 Ky. Law Rep., 513; Robinson v. Sharp, 17 Ky. Law. Rep., 736; Patterson v. Louisville Trust Co., 17 Ky. Law Rep., 234; Ross v. Wilson, 7 Bush, 29; Petrey v. Randolph, 85 Ky., 351; Loth & Hass v. Carty, 85 Ky., 594; Louisville Banking Co. v. Leonard, 90 Ky., 106; sec. 438, Civil Code of Practice.

(2) A mortgage to secure future advancements, which fails to state the amount to be so advanced, or a maximum sum within which such advancements are to be made, is not a recordable instrument, and therefore is inoperative and void, as to creditors of the mortgagor, or an assignee for the benefit of such creditors. (The authorities cited under Point No. 1. are applicable to this point.) and—Louisville Banking Co. v. Leonard 90 Ky., 113; Shiras v. Craig, 7 Cranch, 34; I Vol. Jones on Mortgages, secs. 374 to 376.

(3) If the facts are such as to show that at the time of making a mortgage, preferring one creditor to another, the debtor must have known he was insolvent, it will be within the scope of section 1910, Kentucky Statutes, forbidding fraudulent preferences. Applegate v. Merrill, 4 Met., 23; Taylor's Adm'r v. Taylor 78 Ky., 471.

(4) Where a preference is made with the knowledge that the debtor is insolvent, the design to prefer, will be presumed. Thompson v. Hiffner, 11 Bush, 353; Grimes v. Grimes, 86 Ky., 511.

(5) Under our assignment Act of March 16, 1894, the assignee has not only the right,—but it is made his duty—to attack fraudulent preferences, made by the insolvent debtor. Sec. 84, Ky. Stats.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellant filed this suit to foreclose a mortgage given to it by Leslie Combs. Appellee, the Security Trust & Safety Vault Company of Lexington, Ky., to whom Leslie Combs had assigned all his property in trust for the equal benefit of his creditors, was also made a defendant to the action, and insists that the mortgage is void for uncertainty. The objection to the mortgage is that it fails to state the sum of money it was given to secure. In Pearce v. Hall, 12 Bush, 209, this court, in a similar case, said: "It is the policy of our law to require parties holding liens upon property not taken into possession to give notice to the public of the existence of their rights; hence, as to purchasers for a valuable consideration and as to creditors, a mortgage does not become operative until lodged for record in the proper office. The spirit of our statutes upon this subject requires not only that such conveyances shall be lodged for record, but that they shall show for themselves, and without the aid of extrinsic evidence to be obtained by inquiry, the nature of the lien, and with a reasonable degree of certainty the amount of the debts they are intended to secure. If the amount be ascertained, as in this case, it ought to be stated. If it be not ascertained, then such descriptive facts as are within the knowledge of the parties, and as tend to put one interested in the inquiry upon the track leading to a discovery, ought to be set out. Unless this much is done, the public record does not show the state of the title, and room is left for the substitution of fictitious and fraudulent claims, and the prime object of the recording system is subject to be defeated." The rule thus announced has been followed in a number of subsequent cases, and may

now be regarded as the settled law of the State. Under it the mortgage sued on is not such an instrument as, when recorded, would be sufficient to give constructive notice to others. But, although the mortgage itself is alone too uncertain to be enforced, it is insisted for appellant that it is sufficient, in connection with the other facts in the case, to create a lien which was good at least between the parties. The record shows that in the spring of the year 1895 Leslie Combs made an arrangement with the appellant by whch it was to advance him $27,000 to enable him to plant and raise 500 acres of tobacco, for which it was to have a lien on the tobacco, and he was to give it a mortgage as soon as the tobacco was set. This arrangement was evidenced by a written contract and note for $27,000 of date February 14, 1895, and the mortgage made pursuant thereto, June 14, 1895, after the tobacco had been set, The money was furnished, and the tobacco grown and sold. The first question to be determined, therefore, is, were the writings referred to, taken together, sufficient to create a lien as between the parties? The material part of the written contract referred to is as follows: "This agreement, entered into on this 14th day of February, 1895, between the Cincinnati Leaf Tobacco Warehouse Company, a corporation organized under the laws of the State of Kentucky, party of the first part, and Leslie Combs of Fayette county, Kentucky, party of the second part, witnesseth: That the said Cincinnati Leaf Tobacco Warehouse Company is to advance to the said Leslie Combs twenty-seven thousand dollars ($27,000.00), and to put the same to his credit upon the books of the Cincinnati Leaf Tobacco Warehouse Company subject to draft, said advances to be made for a period of six months, and to be entirely repaid within that time. The said Combs is to give

a note for the said $27,000.00, signed by himself and Daniel Swigert, payable to the order of the Cincinnati Leaf Tobacco Warehouse Company, six months after date, with 6 per cent. interest from date. The said Combs further agrees to plant five hundred acres of tobacco in Fayette county, Kentucky, and to execute a mortgage lien to the Cincinnati Leaf Tobacco Warehouse Company upon the said crop so planted as soon as said crop is set out. [Signed] Cincinnati Leaf Tobacco Warehouse Co., E. Fusshippel, Secretary. Leslie Combs." The note referred to, so far as material, is as follows: "Cincinnati, Ohio, Feb. 14, 1895. $27,000.00. Six months after date we, or either of us promise to pay Cincinnati Leaf Tobacco Warehouse Company, or order, twenty-seven thousand dollars for value received negotiable and payable at First National Bank, this city, with interest at six per cent. per annum from date. ———. [Signed] Leslie Combs. D. Swigert." The material part of the mortgage is as follows: "Know all men by these presents: That whereas, on the 14th day of February, 1895, a certain contract was entered into between the Cincinnati Leaf Tobacco Warehouse Company, a corporation organized under the laws of the State of Kentucky, party of the first part, and Leslie Combs, of Fayette county, Kentucky, party of the second part, whereby said Cincinnati Leaf Tobacco Warehouse Company advanced and loaned to said Leslie Combs a certain sum of money for the purpose of assisting said Leslie Combs to plant a certain crop of tobacco on his farm in Fayette county, Kentucky, and for which a note was executed by the said Leslie Combs payable to the order of the Cincinnati Leaf Tobacco Warehouse Company and whereas, by said agreement entered into at said time the said Leslie Combs agreed to execute to the said Cincinnati Leaf To-

bacco Warehouse Company a lien upon the tobacco crop so planted, as soon as said crop was set out and whereas, said Cincinnati Leaf Tobacco Warehouse Company has, under the terms of said agreement, advanced and loaned to the said Leslie Combs the sum of money referred to above, which sum the said Leslie Combs has, under the terms of said agreement, received from said Cincinnati Leaf Tobacco Warehouse Company: Now, therefore, in order to carry into effect the provisions of the said contract, and in consideration of the sum of one dollar to the said Leslie Combs in hand paid by said Cincinnati Leaf Tobacco Warehouse Company, the receipt whereof is hereby acknowledged, the said Leslie Combs does hereby grant, bargain, sell, and convey to the said Cincinnati Leaf Tobacco Warehouse Company all the tobacco consisting of all the crops of tobacco raised by said Leslie Combs, or his tenants, in the year 1895, on his different farms in Fayette county, Kentucky, viz. [here follows a description of the land.]　[Signed] Leslie Combs."

These three papers, taken together, very clearly show that the debt secured by the mortgage was the sum of $27,000, and they contain sufficient matter on their face to identify them as parts of one contract which may properly be read together to ascertain the intention of the parties. Appellant therefore acquired under them a lien on the tobacco which was good as between it and Leslie Combs. It remains to inquire whether this lien may be enforced against the trust company, as his assignee for the benefit of his creditors. In Zaring v. Cox's Assignee, 78 Ky., 528, where a similar question was made, this court said: "The conveyance by Goar to Cox, although unrecorded, and without notice, gave Goar an equity superior to that of antecedent creditors of Cox, who had notice of the equity be-

fore they acquired a legal right to the property in controversy. In a contest between mere equities that which is prior in time must prevail. Forepaugh v. Appold, 17 B. Mon., 630. The subsequent conveyance by Cox to Goar for the payment of debts gave appellants simply an equitable right to claim their distributive share as creditors under the conveyance and that equity, not having been reduced to a legal right before notice of the equity of Goar, by reason of the previous conveyance by Goar to Cox in which a lien was retained, is subordinate to the claim of Goar. Swigert v. Bank 17 B. Mon., 286 Morton v. Robards, 4 Dana, 263. The rights of Goar against appellants remain the same after the assignment to pay debts as before. The simple deed of assignment gave appellants no rights as against Goar that they did not previously have. Perry, Trusts, section 596." This was afterward followed in Bank v. Stone, 80 Ky., 109; Bridgford v. Barbour, Id., 529; Kentucky Nat. Bank v. Louisville Bagging Co., 98 Ky., 371, (33 S. W., 101). Under the rule laid down in these cases any equity which may be enforced against the assignor is equally available as against the assignee. Section 496, Kentucky Statutes, provides that "no deed or deeds of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against the purchaser for valuable consideration without notice thereof or against creditors until such deed shall be acknowledged or proved according to law and lodged for record." But as the assignee for the benefit of creditors, being neither a purchaser for a valuable consideration nor a creditor, is not protected by this statute. Even as to creditors the rule is well settled in this State that the oldest equity prevails, and that an unrecorded mortgage will have preference over an attachment or an execution lien

of at least antecedent creditors, if notice is given before a sale of the property. Baldwin v. Crow, 86 Ky., 679, (7 S. W., 146); Com. v. Robinson, 96 Ky., 553, (29 S. W., 306); Wicks v. McConnell (Ky.) 43 S. W., 205; Clift v. Williams (Ky.) 49 S. W., 328. There is nothing in any of the cases relied on for appellees inconsistent with this conclusion. In Pearce v. Hall, 12 Bush, 209, the doctrine that the oldest equity must prevail where the mortgage is valid as between the mortgagor and mortgagee is distinctly recognized by the court, and the decision is rested on the ground that the writings produced in that case were not sufficient to bring it within the rule. The case of Thompson v. Thompson (Ky.) 29 S. W., 1331, involved a homestead, on which a lien can only be created in the mode specified by the statute, and, the mortgage being defective, there was no lien on the homestead as between the mortgagor and the mortgagee. In Robinson v. Sharp (Ky.) 32 S. W., 416, 761, the facts are very meagerly stated in the opinion; but it would seem from what is said that the case was put on the same ground as Pearce v. Hall, 12 Bush, 209, as it is stated that the mortgage did not show to whom the notes were payable; and, so far as appears, it did not identify in any way the debt secured by reference to other writings. If such a mortgage were upheld, especially against the lien of an attaching creditor, the necessity of written instruments signed by the parties would be substantially dispensed with in cases of this character. But in the case before us, the mortgage referred in apt terms to the preceding writings, and sufficiently identified them; and, though the record of the mortgage alone did not give constructive notice of the lien, if all three of the papers had been recorded there would have been no doubt on this subject. Appellant, therefore, stands on the plane of a mortgagor holding an

unrecorded mortgage, and as against the assignee for the benefit of creditors its older equity must prevail. As the proceeds arising from the sale of the tobacco are insufficient to discharge the first mortgage lien, it is unnecessary for us to determine the rights of the parties under the second mortgage or to discuss the questions made on it. Judgment reversed, and cause remanded for a judgment and further proceedings not inconsistent with this opinion.