## Brown v. Woods Motor Company.

(Decided May 26, 1931.)

NELSON D. RODES for appellant.

CHAS. T. CORN and C. C. BAGBY for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

This suit was instituted by the appellee, Woods Motor Company, to recover possession of an automobile truck from the appellant, I. C. Brown, which had been

sold to him in August, 1929, under a conditional sale contract which provided:

"It is agreed that the title to, and ownership in, said chattel are vested in you (seller) and your assigns until such indebtedness and all other sums of money payable to you, whether evidenced by note, book account or otherwise, also any judgments which you, your successors or assigns may obtain therefor, shall have been fully paid in money, at which time ownership shall pass to me or us (purchaser). . . . If any of my or our indebtedness shall become due and remain unpaid in whole or in part . . . the full amount unpaid hereunder, including any note given, shall become due and payable forthwith; . . . and you or your assigns may, without any previous notice or demand of performance, and without legal process, enter any premises where said chattel may be found and take possession thereof. . . ."

Robert Kinnaird, agent of the motor company, who made the sale, testified that the price was $2,070, plus what is called a "carrying charge" covering interest on deferred payments, insurance, etc., aggregating $187.68, which made the total sale price $2,257.68. The cash payment was to be $690, but the sum actually paid was $443; the balance of $247 being given as a credit in order to meet competition. The balance of the purchase price, $1,567.68, was payable at the rate of $130.64 a month for twelve months. The purchaser signed a contract, and perhaps another document evidencing his obligation, which contained the name of a certain Lexington company which was engaged in the business of buying such instruments (commonly called a finance company). However, it refused to accept Brown's paper. Within three or four days Brown was approached and told that they would have to change the contract and get some one else to handle the transaction, but, to avoid embarrassment, Kinnaird did not tell him the reason. At his request Brown signed another form of contract, with the blanks to be supplied when the new arrangement could be made. It was again expressly agreed that the balance was $1,380 plus "carrying charges." This form, so the agent testified, was later filled out exactly as was the first one, with the exception of the name of the company

who would discount or take the obligations for monthly payments. The first contract was given back to Brown. It was well understood by Brown, who himself was engaged in the automobile business, that there was a slight difference between "carrying charges" of different finance companies. In September, during which the first installment was payable, Brown came to Kinnaird and suggested that he had received no notice as to where to make the monthly payments nor exactly how much they would be. He was reminded that there had been some question about who would handle the transaction, and was advised that it was probable that his company had not yet found any one who would handle it. He was told, "The payment, you know, is somewhere between $127.50 and $133.00; it is somewhere in that neighborhood," and it was suggested that the check should be made for the lowest amount, $127.50, and an adjustment could be made later if there was any difference. It appears that the motor company still held the paper and was itself carrying the obligation. In October Brown sent a check for a similar amount to the motor company. The agent at Danville was advised then that the payments should have been $130.64. When he called on Brown for the difference, he refused to pay it. He did not pay anything for November or December. Brown was therefore in default.

The defendant, Brown, testified that the purchase price was $1,793.50, with a cash payment of $443, and that the balance of $1,350.50 was payable in twelve monthly installments of $127.81 each. We cannot reconcile his figures, since the aggregate of those sums is $1,530, unless the difference of $180 represents what Brown considered to be the "carrying charges." He denied that there was ever but one writing, which he signed in blank upon the assurance of the salesman that it was necessary to be filled out in Lexington, and he contradicted the evidence of the salesman in other particulars. When he made inquiry as to where to pay the monthly installments due, he was told that Mr. Woods of the motor company probably had the paper, and then he and the salesman examined a "finance card" and ascertained that the amount would be $127.81 a month. The salesman filled out a check for $127.50, which he (Brown) signed. When request was made for more, he declined to pay the difference on the ground that he had

paid according to the contract. He continued to insist that the monthly payment should be $127.81 and not $130.64. The entire sum involved and which has given rise to this litigation is only $33.96. The defendant tendered into court $255, representing the amount of delinquent payments, as he contended, for November and December, the acceptance of which was declined by the plaintiff.

The issue clearly was only as to what was the contract, and the court submitted it to the jury in two instructions. Not being able to agree after some deliberation, the jury asked further advice of the court. Without it being then given, the jury was permitted to separate for the night under proper admonition. The next morning they were informed by a third instruction that title to the truck had always been in the plaintiff and that the money paid into court was then and had always been the property of the defendant, and that the case involved only the right to possession of the truck because of the alleged failure of the defendant to pay one or more of the monthly installments of the purchase money; "it being undisputed that the contract between the parties provided that plaintiff should have the right to repossess himself of the truck upon a failure to pay any of the monthly installments when due." Counsel for both parties reargued the case. The jury returned a verdict for the plaintiff.

On the issue of fact there can be no doubt as to the propriety of the court overruling defendant's motion for a peremptory instruction, for the evidence was in direct conflict as to what the contract was. It is argued that there was nothing definite ever agreed upon by the parties as to the amount of the monthly payments to be made. Plaintiff's witness testified positively that it was agreed that they should be $130.64, and the defendant that they should be $127.81. While there is a difference in the amounts used by the two witnesses in arriving at the balance of the purchase price to be paid in installments, they arrived at the same result. The case resolved itself into the question only as to the monthly payments. The defendant admits default for two months even on the basis he claimed.

The objection to which appellant directs his principal argument is that relating to the third instruction.

The time of its giving was not prejudicial error, if error at all, as counsel contends. Paducah Traction Company v. Sine, 111 S. W. 356, 33 Ky. Law Rep. 792. A trial ought to be conducted in a practical way, and this procedure was the better one to follow.

In L. & E. Ry. Co. v. Boatright, 164 Ky. 374, 175 S. W. 648, the jury had announced its inability to agree, and advised the judge that they could not understand from the instructions whether or not the plaintiff could thereafter sue the defendant for damages by reason of the diversion of the flow of a river. Thereupon the court orally stated that the plaintiff could not, as he was of the opinion that the present case would conclude all claims of that kind. Suggesting that it would have been better to have given the instruction in writing, it was held that no harm was done as the trial court had merely stated the law and had given the jury information to which they were entitled in order to reach a proper verdict.

So it is here. The contract, as shown by the excerpt above quoted, was a conditional sale agreement, with the title of the truck remaining in the seller and the right of repossessing it given upon failure to pay any part of the unpaid purchase money when due. In this jurisdiction prior to the adoption, with some modifications, of the Uniform Sales Act in 1928 (section 2651b-1 et seq.), a contract of this kind was held to be a sale with a mortgage back, which gave to the seller only a lien on the chattel. Cable Piano Company v. Lewis, 195 Ky. 666, 243 S. W. 924; Morrow Mfg. Company v. Race Creek Coal Company, 222 Ky. 807, 2 S. W. (2d) 662.

It is now provided by Section 2651b-20, Statutes (a part of the act):

"Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved, notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer."

Section 2651b-76, in defining the terms of the act, declares:

"'Property' means the general property in goods, and not merely a special property."

The title to the machine, therefore, did not pass to the plaintiff; and the instruction about which complaint is made, as in the Boatright Case, merely stated the law and gave the jury information to which they were entitled in order to reach a verdict. The right of repossession, however, was dependent upon default in the payments (24 R. C. L. 479), and they in turn depended upon what the contract was.

On the verdict of the jury determining the facts, the judgment merely awards the possession of the machine to the plaintiff.

Without any purpose of prejudging, it may be observed that, having regained possession of the chattel, the rights of the buyer inuring to him from the payment of more than one-third of the purchase price of the machine were not forfeited, anything in the contract to the contrary notwithstanding. The Sales Act undertakes to provide appropriate remedies, and, when administered with the application of equitable principles, we have no doubt the rights of both parties will be conserved. See Williston on Sales, sec. 543 et seq., 579; Bankston v. Hill, 134 Miss. 288, 98 So. 689, 37 A. L. R. 88; City of Arlington v. Powell, 226 Ky. 353, 10 S. W. (2d) 1060.

Judgment affirmed.