## Munz v. National Bond & Investment Company.

(Decided March 25, 1932.)

EDWIN ABRAHAM for appellant.

SCHINDLER & ADAMS for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

This case involves the rights of an innocent purchaser of personal property as against the holder of a note secured by an unrecorded conditional sales contract covering the same property. The relative rights of such parties, in the final analysis, depends upon whether a conditional sales contract, as defined by the Uniform Sales Act adopted in Kentucky on March 26, 1928 (Ky. Stats., sec. 2651b-1 et seq.), must be recorded or filed to be effective against a bona fide purchaser without notice. The circuit court held that such contracts were not required to be recorded, and that the rights of a purchaser from the conditional vendee under a conditional sales contract were subordinate to those of the conditional seller. The facts were stipulated and may be briefly stated.

The Stultz Motor Company, on March 10, 1931, sold a Hupmobile to E. W. Colbert for a consideration of $1,386.60, of which $585 was paid in cash. A negotiable note was given for the balance of $801.60, payable at the office of the National Bond & Investment Company, in monthly installments of $66.80 each, beginning on April 10, 1931. The note recited that it was given in conformity with the provisions of the conditional sales contract. The parties also executed a document entitled "Kentucky Negotiable Document Title" which provided, in substance, that the seller had agreed to sell and deliver to the order of the purchaser the Hupmobile described, together with all parts, tires, and equipment thereon, and the buyer had agreed to pay the purchase price above stated in the manner stipulated. The document provided:

"To induce the Seller to deliver possession of said car to the order of the Purchaser, the Purchaser hereby agrees, covenants and warrants as follows, viz.:

"(1) The title to the above described car shall not pass to the Purchaser until all installments of

said note are paid in full, and until such payments shall have been made, said car shall remain the property of the Seller. The negotiable promissory note given by the Purchaser as herein provided shall not be considered as payment of the purchase price of said car or as payment of such indebtedness. Said car shall not be sold by the Purchaser or taken out of the State of Kentucky, without written consent of the Seller until all the payments shall have been made and title vested in the Purchaser."

There were many other provisions concerning the use and maintenance of the car, the payment of taxes, liens and incumbrances thereon for repairs or otherwise, and further agreements respecting the relative rights of the parties in various circumstances enumerated. On the day after it was dated, the note and document described were transferred for value to the National Bond & Investment Company. Thus the seller of the car was paid in full, the buyer took the automobile, and the National Bond & Investment Company took the note secured by the conditional sales contract.

On April 9, 1931, Colbert sold the car to G. W. Munz for $1,000, which amount was paid upon the transfer of the title and delivery of the car. It is conceded that Munz was a purchaser for value without notice, and that he was in all respects a bona fide buyer. Colbert then defaulted on the installment of the note due April 10, 1931, and within three days the National Bond & Investment Company instituted the action to recover possession of the car. An order of delivery was executed, and the car was taken from Munz and delivered to the plaintiff. The circuit court decided that Munz had acquired no rights in the car as against the plaintiff, and Munz has prosecuted the present appeal.

It is the contention of the appellant that the Uniform Sales Act, adopted in this state on March 26, 1928, worked no change in the recording acts, or the legal rights thereby protected, whilst the appellee insists that the conditional sales contract is not a recordable instrument and is valid against an innocent purchaser as well as between the parties thereto. The litigants agree substantially as to the state of the law in this jurisdiction when the Uniform Sales Act was adopted. Conditional sales contracts were not wholly invalid, but were given

effect as instruments to secure debts. The rule established by a long line of decisions was that, regardless of the name or form of a transaction, if it was designed to hold personal property as a security for debt, it was equivalent in law to a chattel mortgage and was required to be recorded in order to be valid against innocent purchasers. Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146, 9 Ky. Law Rep. 836; Wicks Bros. v. McConnell, 102 Ky. 345, 43 S. W. 205, 20 Ky. Law Rep. 84; Welch v. National Cash Register Co., 103 Ky. 30, 44 S. W. 124, 19 Ky. Law Rep. 1664; Clift v. Williams, 105 Ky. 567, 49 S. W. 328, 20 Ky. Law Rep. 1261, 51 S. W. 821, 21 Ky. Law Rep. 551; Cincinnati Leaf Tobacco Warehouse v. Combs, 109 Ky. 28, 58 S. W. 420, 22 Ky. Law Rep. 523; Rankin v. McFarlane Carriage Co., 75 S. W. 221, 25 Ky. Law Rep. 258; Montenegro-Riehm Music Co. v. Beuris, 160 Ky. 557, 169 S. W. 986, L. R. A. 1916C, 557; General Motors Acceptance Corp. v. Sharp Motor Sales Co., 233 Ky. 290, 25 S. W. (2d) 405; Morris & Co. v. Heaton, 235 Ky. 66, 29 S. W. (2d) 617.

Such contracts were not deemed invalid, but were construed according to the real purpose and effect of the instrument. As between the parties however, if the rights conferred could be exercised without violence, trespass, or a breach of peace, such contracts were permitted to be enforced according to their terms. White Sewing Machine Co. v. Conner, 111 Ky. 827, 64 S. W. 841, 23 Ky. Law Rep. 1125; Montenegro-Riehm Music Co. v. Beuris, supra; Hawkins Furniture Co. v. Morris, 143 Ky. 738, 137 S. W. 527. But when the seller under a conditional sales contract regained possession of the property it was necessary for him to give the purchaser an opportunity to redeem, and, if not redeemed within a reasonable time, the property had to be disposed of at a fair sale on adequate notice, and the proceeds applied first, to satisfy the debt, and expense, and, second, to reimburse the purchaser to the extent of the surplus remaining. Such contracts when properly executed and proven, were recordable instruments, and, when properly recorded, constituted constructive notice to all the world. Cable Piano Co. v. Lewis, 195 Ky. 666, 243 S. W. 924; Barney & Smith Mfg. Co. v. Hart, 1 S. W. 414, 8 Ky. Law Rep. 223; Wender Blue Gem Coal Co. v. Louisville Property Co., 137 Ky. 339, 125 S. W. 732; Welch v. National Cash Register Co., 103 Ky. 30, 44 S. W. 124, 19 Ky. Law Rep. 1664; Starr Piano Co. v. Petrey, 168

Ky. 530, 182 S. W. 624; Hauseman Motor Co. v. Napier-ella, 223 Ky. 433, 3 S. W. (2d) 1084.

The public policy of Kentucky with reference to requiring recordation of instruments creating liens or incumbrances on personal property has been manifested by numerous statutes. Section 496, Kentucky Statutes, provides:

> "No deed or deed of trust or mortgage convey-ing a legal or equitable title to real or personal estate shall be valid against a purchaser for a val-uable consideration, without notice thereof, or against creditors, until such deed or mortgage shall be acknowledged or proved according to law and lodged for record. The word 'creditors' as used herein shall include all creditors irrespective of whether or not they may have acquired a lien by legal or equitable proceedings or by voluntary con-veyance."

Section 1908 is as follows:

> "Every voluntary alienation of or charge upon personal property, unless the actual possession, in good faith, accompanies the same, shall be voided as to a purchaser without notice, or any creditor, prior to the lodging for record of such transfer or charge in the office of the county court for the county where the alienor or person creating the charge resides."

In 1928 a new act was passed which is now section 523a-2, Kentucky Statutes, as follows:

> "It shall not be necessary to record chattel mort-gages, deeds of trust or other instruments intended to operate as pledges, mortgages or liens upon per-sonal property, and such instruments shall not be recorded at length, but, upon filing such instruments and indexing and entering an abstract of the facts in the minute book as herein below directed, in the office of the clerk of the county court, all persons shall thereby be charged with notice thereof and of the rights of the mortgagee, trustee, his or its assignee or representative thereunder."

Further sections of the act regulate the duties of the clerks and the method of releasing rights thus secured.

It is also provided by still another statute that a gift, transfer, or assignment of personal property between husband and wife shall not be valid unless such transfer be in writing, and acknowledged and recorded as chattel mortgages are required by law to be acknowledged and recorded. Ky. Stats., sec. 2128. It will be observed that the recording acts are not confined to chattel mortgages, but cover all instruments conveying a legal or equitable interest in personal property. Although we need not pause to determine its exact character or extent, it is not disputed anywhere that a conditional sales contract does convey some interest or estate, legal or equitable, to the conditional vendee, which interest or estate the law recognizes and protects. 39 Harvard Law Review, 658; Carolina, C. & O. Ry. Co. v. Unaka Springs Lumber Co., 130 Tenn. 354, 170 S. W. 591; Stotts v. Puget Sound Traction, Light & Power Co., 94 Wash. 339, 162 P. 519, L. R. A. 1917D, 214; Harris v. Seaboard Air Line R. Co., 190 N. C. 484, 130 S. E. 319, 49 A. L. R. 1452; Wilkes v. Southern Ry., 85 S. C. 346, 67 S. E. 292, 137 Am. St. Rep. 890, 21 Ann. Cas. 79; Harrington v. King, 121 Mass. 269; Union Ry. Co. v. Remedial Finance Co., 163 Tenn. 130, 40 S. W. (2d) 1034; In re James (C. C. A.), 30 F. (2d) 555; Brown v. Woods Motor Co., 239 Ky. 312, 39 S. W. (2d) 507.

The note executed for the purchase price of the automobile constituted a debt absolute in its terms and payable at all hazards. It was secured by the conditional sales contract. When possession of the property sold under such contracts is retaken, as it may be under the Uniform Sales Act, it does not extinguish the rights of the parties. The buyer must still pay the debt and the seller must proceed upon equitable principles to subject the property with due regard to the rights and equities of the buyer. Brown v. Woods Motor Co., 239 Ky. 312, 39 S. W. (2d) 507.

We proceed now to a consideration of the provisions of the Uniform Sales Act as they affect the subject-matter of the present controversy. It will not be necessary to consider any changes wrought in the law of sales, except as related to the recording of sales contracts. The first section of the act defines "a contract to sell goods as a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price. A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for

a consideration called the price. A contract to sell or a sale may be absolute or conditional.'' Ky. Stats., sec. 2651b-1. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. Rules are prescribed for the purpose of ascertaining the intention of the parties which must be deduced from the terms of the contract, the conduct of the parties, the usages of trade, and the circumstances of the case. Ky. Stats., sec. 2651b-18.

Section 2651b-20 authorizes the reservation of the right or possession of the property in the goods until certain conditions have been fulfilled.

Section 2651b-23 is as follows:

''(1) Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.

''(2) Nothing in this act, however, shall affect:

''(a) The provisions of any factors' acts, recording acts, or any enactment enabling the apparent owner of goods to dispose of them as if he were the true owner thereof.

''(b) The validity of any contract to sell or sale under any special common law or statutory power of sale or under the order of a court of competent jurisdiction.''

It will be observed that the statute contains an explicit declaration that the provisions of recording acts shall not be affected by anything found in the Uniform Sales Acts. Section 75 of the act (Ky. Stats., sec. 2651b-75) provides:

''The provisions of this act relating to contracts to sell and to sales do not apply, unless so stated, to any transaction in the form of a contract to sell or a sale which is intended to operate by way of mortgage, pledge, charge, or other security.''

The authors of the Uniform Sales Act prepared a companion act entitled ''An Act concerning conditional sales and to make uniform the law relating thereto.''

When the two acts are adopted together they create a harmonious regulation of the whole subject and no confusion arises, since the conditional sales act expressly provides that every provision in a conditional sales contract reserving property in the seller shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachement or levy a lien upon them before the contract, or a copy thereof, shall be filed as in the act provided unless such contract or copy is filed within ten days after the making of the conditional sale. Williston, On Sales (2d Ed.), vol. 2, p. 1805. So when the Uniform Sales Act is adopted, and the Conditional Sales Act is not, confusion arises from the effort to apply the Uniform Sales Act to matters it was not intended to embrace. But when the history, purpose, and terms of the two acts are understood, it is perfectly obvious that the Uniform Sales Act did not operate to impair, alter, or affect in any manner any statute then in force requiring sales contracts to be recorded. Whether such instruments are called by one name or another is wholly immaterial. It is the character and purpose, not the name, of the instrument that determines its status. Any instrument or document that was recordable before the Uniform Sales Act was enacted remained recordable thereafter, even though its name may have been changed. The Uniform Sales Act was intended to leave conditional sales in their existing condition except in so far as the remedies available were enlarged. Geo. G. Bogert, who was one of the authors of the Uniform Sales Act and also of the conditional sales act, in referring to the Illinois situation, where only the Uniform Sales Act was adopted, said:

"The legislature should now adopt the Uniform Conditional Sales Act, in order to provide a recording system and foreclosure rules. It has long required chattel mortgages to be recorded, in order to be valid against third persons. If recording is needed to protect the public in the case of chattel mortgages, it is likewise needed in the conditional sale. Without public record, the possession of both mortgagor and buyer is deceptive and may lead to fraud on creditors, mortgagees, and subpurchasers. Thirty-two states now have filing or recording statutes in the case of conditional sales. A few others

have statutes applying to certain conditional sales only. At least three states have adopted filing systems within the last decade. Maryland in 1916, New Mexico in 1917, and Pennsylvania in 1925. In Mississippi there is no provision for record, but the Supreme Court has urged on the legislature the need of such a system." Ill. Law Quarterly, Vol. XX, p. 711. See also, Bogart, Commentaries on Conditional Sales, vol. 2A, Uniform Laws Annotated, (1924), p. 59, and 55 C. J., sec. 1239, p. 1242.

The Illinois Legislature adopted the Uniform Sales Act without the Conditional Sales Act. It was held by the Supreme Court of that state that no provision of the Uniform Sales Act required or authorized the recording of a conditional sales contract, and, since there was no law in force in that state before its enactment requiring such contracts to be recorded, Illinois was without a law that permitted the recording of such contracts. Sherer-Gillett Co. v. Long, 318 Ill. 432, 149 N. E. 225. The decision is an authority to the effect that the Uniform Sales Act effects no change whatever in the recording laws of any state where it may be adopted.

In Anchor Concrete Machinery Co. v. Pennsylvania Brick & Tile Co., 292 Pa. 86, 140 A. 766, under the Uniform Sales Act, passed in Pennsylvania, without the companion act, it was held that an innocent purchaser for value from a conditional vendee in possession acquired a good title against the conditional vendor. In Pennsylvania such instruments were previously recordable, and had to be recorded in order to be good against innocent purchasers. It was argued there, as it is here, that the passage of the Uniform Sales Act was intended to change the law, and, since it did not require conditional sales contracts to be recorded, it was not necessary to record them. But that court held, as we hold, that the Uniform Sales Act did not affect any recording act, and any instrument that was permitted or required to be recorded before such act was passed retained its character as such unaltered by that statute.

In Burroughs Adding Machine Co. v. Wieselberg, 230 Mich. 15, 203 N. W. 160, the Supreme Court of Michigan held: If an instrument presents a case of security in the nature of a chattel mortgage, and the rights of third parties intervene, it comes within the law relating

to the recording of instruments of that character. A pure conditional sale gives possession of chattels with a right to become the owner upon payment of the price, retaining title in the seller with a right of reclamation in case of default, or the alternative right of passing title by suing for the purchase price. If the instrument confers a right to retake the property, retain the payments made, deduct the damages, and look to the buyer for any deficiency in the agreed price, it is consonant only with the remedies available under an instrument in the nature of a chattel mortgage. If the seller is not limited to a right to retake the property and retain the payments made, but after reclamation may enforce payment of the remainder of the price, and the instrument permits that to be done, it is merely a security in the nature of a chattel mortgage. If the title is retained as a security for the price, and the obligation further to pay is not abated by a retaking of the property and retention of partial payments, then the transaction is not a pure conditional sale, but an undertaking in the nature of a chattel mortgage. See also, 55 C. J., sec. 1239, p. 1242, and sec. 1247, p. 1248. Cf. Flynn v. Garford Motor Truck Co., 149 Wash. 264, 270 P. 806.

We are constrained to the conclusion, upon reason and authority, that the Uniform Sales Act of March 26, 1928, worked no change in the laws of this state requiring the recording or filing of a conditional sales contract in order to be valid against innocent purchasers. It follows that the judgment in the circuit court should have been in favor of the appellant.

The judgment is reversed, for a judgment in accordance with this opinion.

Whole court sitting.