## COMMERCIAL INV. TRUST CORPORATION v. WILSON.

### No. 5943.

Circuit Court of Appeals, Sixth Circuit.

May 6, 1932.

M. P. Kupfer, of New York City (Napier & Eblen and M. K. Eblen, all of Hazard, Ky., and Phillip W. Haberman, of New York City, on the brief), for appellant.

G. C. Thompson and L. O. Thompson, both of Lexington, Ky. (W. W. Reeves, of Hazard, Ky., on the brief), for appellee.

Before HICKENLOOPER, MACK, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The facts of the case are in many respects similar to those of Hamilton National Bank v. McCallum, and Chattanooga Finance Company v. McCallum (C. C. A.) 58 F.(2d) 912, disposed of in a single opinion this day announced. The question presented involves the validity as against a trustee in bankruptcy, of the security title claimed by the holder of a trust receipt not recorded under the provisions of section 496 of the Kentucky Revised Statutes. The statute, so far as material, is printed in the margin.[1]

The bankrupt, the Draughn & Steele Motor Company, desired to purchase from the distributor a Dodge automobile. It applied to the appellant to enable it to obtain the car. A procedure followed, known as the "floor plan." The distributor shipped the car to itself as consignee under a negotiable bill of lading indorsed in blank with sight draft attached, and sent the documents to its own

[1] "§ 496. *Deeds and Mortgages not valid against purchasers or creditors until recorded.* * * * No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage shall be acknowledged or proved according to law and lodged for record."

local bank at Hazard, Ky. Appellant sent to the bank its check in full payment of the sight draft. The bank thereupon notified the bankrupt to come to its banking rooms to execute a trust receipt and time draft. This the bankrupt did, at the same time paying appellant 15 per cent. of the invoiced price of the car. Thereafter the bank delivered the bill of lading to the bankrupt to enable it to obtain physical possession of the automobile.

In the trust receipt, the bankrupt acknowledged receipt of the car from the appellant as owner, and agreed to hold it in trust for the appellant as its property, and to return the same on demand; the receipt expressing the intention to preserve unimpaired appellant's title to the car until the full payment of the bankrupt's acceptance of the same date. The bankrupt further undertook to keep a separate account of all motor vehicles delivered, either under the executed receipt, or any like receipt, and to permit appellant to examine cars at all reasonable times. The bankrupt had the right to sell the car for not less than a minimum price, on condition, however, that in case of sale the proceeds would be kept separate from its own funds and be immediately handed to appellant. Upon bankruptcy adjudication of Draughn & Steele, the appellee, as bankrupt's trustee, took possession of the car, and the appellant thereupon filed its reclamation petition. The referee's order granting the prayer of the petition was reversed by the District Judge, and this appeal followed.

The trust receipt here involved is the typical form used in financing commercial transactions, and the methods employed conform more closely to conventional practice than those in the McCallum Cases. What was there said respecting trust receipts need not be repeated, and is in harmony with the view taken of them by this court in In re Bettman-Johnson Company, 250 F. 657. But just as in the Bettman-Johnson Case we reached a different result than in the McCallum Cases, based upon the terms of the Ohio Recording Act as interpreted by the courts of that state, so are we now compelled to align this case with the Bettman-Johnson Case, rather than with the McCallum Cases, by what we deem to be the clear interpretation put by the Kentucky Court of Appeals on the Kentucky statute.

While it would seem that the Kentucky statute does not differ substantially from the Tennessee statute (see note to the dissenting opinion in the McCallum Cases), and that neither is as comprehensive as the Ohio statute (section 8568, General Code), which ruled the Bettman-Johnson decision, this is not a case for primary interpretation. The Kentucky rule, settled by an unbroken line of decisions, is to the effect that whatever may be the name or form of a transaction, when it is designed to hold personal property as a mere security for a debt, it is regarded as a chattel mortgage. General Motors Acceptance Corporation v. Sharp Motor Sales Company, 233 Ky. 290, 25 S.W.(2d) 405; Fry Brothers v. Theobald, 205 Ky. 146, 265 S. W. 498. The cases cited include sufficiently complete reference to prior holdings. It is true that the Kentucky rule, as pointed out by the District Judge, was in the beginning based upon the theory that conditional sales contracts, and other forms of chattel security, were regarded as mortgages, with title passing to the purchaser, and that since the adoption of the Uniform Sales Act this is no longer the case (Brown v. Woods Motor Company, 239 Ky. 312, 39 S.W.[2d] 507), yet in the recent case of Munz v. National Bond & Investment Company, 243 Ky. 293, 47 S.W.(2d) 1055, decided March 25, 1932, it was held that the Uniform Sales Act does not in any way affect the requirements of the Kentucky statute in respect to recording the classes of instruments which prior to its adoption were recordable. The court also takes occasion in that case to restate the rule established by the long line of its own decisions in respect to chattel security. We do not find Glass v. Cundiff & Longest, 167 Ky. 760, 181 S. W. 638, in conflict, but even if so, it would not be controlling in view of the clear language of later decisions.

In Fry Brothers v. Theobald, supra, the Kentucky court, having to decide how far it should be governed by rules of comity, points out important distinctions between the applicable law of Kentucky and Tennessee in respect to recording. In so far as its opinion is persuasive with us, it confirms our judgment, otherwise arrived at, that local law furnishes us here with a rule of decision not present in the Tennessee case.

The order of the District Judge is affirmed.