## General Motors Acceptance Corporation v. Dickinson.

(Decided May 26, 1933.)

H. H. OWENS for appellant.
V. A. JORDAN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

This case presents the relative rights and duties of a buyer and seller of tangible personal property under a conditional sales contract where, on the default of the buyer, the seller under an express provision of the sales contract authorizing him to do so has repossessed himself of the goods sold and has undertaken to resell the goods so repossessed.

Prior to the passage of the Uniform Sales Act in this state in 1928 (Acts 1928, c. 148), this court had consistently held a conditional sales contract to be in effect a chattel mortgage and applied to the situation of a default the remedies available to a mortgagee under an ordinary chattel mortgage. The passage of the Uniform Sales Act, especially in so far as it bore on conditional sales, presented new and perplexing problems. As said in the case of Munz v. National Bond & Investment Co., 243 Ky. 293, 47 S. W. (2d) 1055, 1058:

"The authors of the Uniform Sales Act prepared a companion act entitled 'An Act concerning conditional sales and to make uniform the law relating thereto.' When the two acts are adopted together they create a harmonious regulation of the whole subject and no confusion arises. * * * When the Uniform Sales Act is adopted, and the Conditional Sales Act is not, confusion arises from the effort to apply the Uniform Sales Act to matters it was not intended to embrace."

Our Legislature has so far not enacted the Uniform Conditional Sales Act, but much confusion would be obliterated if the Legislature would adopt this act and so round out and complete the Uniform Sales Act heretofore adopted.

Since the passage of the Uniform Sales Act with its provisions applicable to conditional sales, we have had no occasion to pass on the rights of the buyer and

seller under a conditional sales contract on default of the buyer beyond to hold that the seller under such contract has the undoubted right to repossess peacefully, if he can, the goods sold. We so held in the case of General Motors Acceptance Corp. v. Shuey, 243 Ky. 74, 47 S. W. (2d) 968, and in Brown v. Woods Motor Co., 239 Ky. 312, 39 S. W. (2d) 507, 509. But as said in the latter case:

> "Without any purpose of prejudging, it may be observed that, having regained possession of the chattel, the rights of the buyer inuring to him from the payment of more than one-third of the purchase price of the machine were not forfeited, anything in the contract to the contrary notwithstanding. The Sales Act undertakes to provide appropriate remedies, and, when administered with the application of equitable principles, we have no doubt the rights of both parties will be conserved."

Just how under such circumstances the rights of both parties are conserved by the courts is inextricable confusion so far as the authorities are concerned, as may be seen from even a cursory reading of the titles "Remedies of Seller against Buyer," 55 C. J. 1268 et seq., and "Remedies of the Buyer," 55 C. J. 1319 et seq. However, as said by the writer in 36 Harvard Law Review, 740:

> "The various forms of sale of chattels on credit all have a common purpose—easier payment for the buyer with sufficient security for the seller. The law should enforce such sales equitably, giving the seller his full security, and guarding the buyer against unjust forfeiture. Despite this simple underlying purpose, the law regarding such contracts has grown complex. This is shown by the attempts to distinguish between a conditional sale and a chattel mortgage. The explanation of this attitude is largely historical. The principles governing mortgages were worked out in equity. A conditional sale looked like an ordinary contract, and law courts naturally assumed jurisdiction. At that time the procedural coalescence of law and equity had not yet begun. Law courts applied their ordinary rules of construction to a conditional sale, and the will of the parties governed. Recognizing it as a

valid contract, they did not analyze its true equitable nature as a means for obtaining security. It is true that there is this legitimate distinction—a conditional sale is, in form, different from a chattel mortgage. This justifies a distinction in the application of the statutes, such as recording acts, but not differences in the substantive rights of the parties.''

Thus we see that the real purpose of the conditional sale is to provide a less troublesome method of providing easier payment for the buyer and of security for the seller than that obtained by the formalities of a bill of sale with a mortgage back. This being true, the courts should enforce such contracts so as to equitably obtain this purpose. As stated, it has been held by us that, on default, the seller under a conditional sales contract may peacefully repossess himself of the chattel sold. At least where a substantial portion of the purchase price has been paid by the buyer prior to the default on his part and the repossession by the seller as is the situation in the case before us (the buyer having paid approximately two-thirds of the purchase price before default and repossession), the seller should under equitable principles afford some measure of protection to the buyer's equity in the property which, as said in the Brown Case, supra, is not forfeited by the default. We are of the opinion that the proper measure of protection in such state of case is obtained by a resale of the property, applying the proceeds to the unpaid portion of the purchase price. If such proceeds exceed such unpaid portion of the purchase price, then the seller should turn over the excess to the buyer; but if they do not equal such unpaid portion, then the seller may proceed against the buyer for the deficiency. In this fashion we attain the real object of the conditional sales contract. Cf. White Sewing Machine Co. v. Conner, 111 Ky. 827, 64 S. W. 841, 23 Ky. Law Rep. 1125. Further, the buyer should have reasonable notice of the time and place of such resale to the end that he may take such steps to protect his interest at the sale by buying in the property or by working up interest in the sale, or otherwise, as may seem best to him. Although the sale may be either public or private, if the contract, as in the instant case, so provides, it is at least the duty

of the seller. to exercise ordinary diligence in obtaining the best sale he can when the property is resold.

Applying these principles to the instant case, we find that the appellee had bought an automobile under a conditional sales contract which had been assigned to the appellant. The original purchase price of the machine was $216, of which all but $81 had been paid when the appellee defaulted in the payment of the installments of the purchase price. About the time of this default the automobile was wrecked, the extent of the damage being in dispute in this case. At all events, the machine was at the instance of the appellee towed in from the place of the wreck and stored in the garage of the Stewart Chevrolet Company at Barbourville, the storage being for and on account of the appellee. Negotiations between the appellant and the appellee looking to an adjustment of the default proving fruitless, the appellant, according to the testimony of the appellee, without notice to appellee repossessed itself of the automobile and without notice to the appellee of its intention to resell the machine did resell it for the sum of $25, although at the time of the wreck due to improvements which had been put on the machine just after its purchase by the appellee it was reasonably worth, despite the damage done it in the wreck, the sum of $300 to $400. The appellant's contention was that at the time it repossessed itself of this car, not only was it in a very bad condition due to the wreck, but it had also been stripped of spark plugs, battery, oil pan, horn, and many other parts and accessories, and that although it did sell the machine at a private sale for the sum of $25, such sum was all the machine was worth at the time. Appellant undertook in its proof to establish that it had given notice to appellee of its intention to resell the car, but it tried to do this by asking the husband of the appellee when he was on the witness stand testifying as the agent of his wife whether or not he had received a letter, a carbon of which was shown to him, addressed to appellee in his care, notifying appellee of appellant's intention to resell the car. He denied receiving any such letter. Appellant rested on this denial and never showed by any one that this letter was ever mailed to appellee, or, indeed, even written. So that the record establishes without contradiction that appellee had no notice of appellant's inten-

tion to resell this car. Appellee brought suit against the appellant for the wrong she claimed had been done her by the appellant in the repossession and resale of this car. Her petition sounded in conversion, but technically this was wrong, as was specifically held in the Shuey Case, supra. She sued not only the appellant but also the Stewart Chevrolet Motor Company. No judgment was rendered against it, and it is not a party to this appeal, so that we may ignore it hereafter in this opinion. After the evidence had been introduced to establish the facts pro and con as above set out, the court submitted the case to the jury under an instruction which, in substance, told the jury that appellant had a right to repossess itself of this car (as indeed it had) and to sell the same (which is likewise true), but that in such sale it would have to exercise ordinary care, having due regard for the fair and reasonable market value of the car, and if it failed to exercise that care, they should find for the appellee. This the jury did, finding that the reasonable market value of the car at the time of the resale was $255, for which judgment was given to the appellee, credited by $55, being the unpaid purchase price less the amount realized on the resale; the jury evidently thinking the unpaid purchase price was $80 instead of $81 as it really was. Judgment against the appellant for the balance of $200 was entered, and from that judgment this appeal is prayed.

The judgment will have to be reversed. The instruction under which the case was submitted to the jury in the light of the applicable law as heretofore laid down is erroneous. The duty of the seller is to give reasonable notice to the buyer of his intention to resell and of the time and place of the resale. It is also the seller's duty to exercise ordinary care to have the property at such resale bring the best price obtainable under the facts and circumstances. Further, the court should not have placed any responsibility upon the appellant for the damage done to the car prior to its repossessing the machine. If the automobile was stripped of its accessories prior to that time, the appellant was in no wise responsible for such damage. On the return of the case to the trial court, appellee may amend her petition to conform with the principles laid down herein as to her cause of action.

The appeal prayed is granted, and the judgment is reversed for proceedings consistent with this opinion.