## Cartwright v. C. I. T. Corporation.

(Decided Feb. 20, 1934.)

(As Modified on Denial of Rehearing April 24, 1934.)

J. FRANKLIN FAIRLEIGH for appellant.

C. E. SCHINDLER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

When the appellant, Victor I. Cartwright, purchased an automobile from the Douglas Garage, he was given an absolute bill of sale by which the machine was "transferred free from any mortgage or other encumbrance." On the same day Cartwright executed what is styled "Conditional Sale Contract." It recites the list price of the machine as $1,143 and "C. I. T. Corporation charge" $112.64, a total of $1,255.64. There was credited on this sum $383 for a cash payment and the value of the car traded in. He agreed to pay the balance of the purchase price in sixteen monthly payments of $54.54. Among the many stipulations and agreements in this paper are provisions that title should remain vested in the seller and its assigns until the indebtedness should be fully paid; upon default in making the payments maturity of the balance might be precipitated at the option of the holder, together with 15 per cent. of such balance additional or a reasonable sum as attorney's fees if the contract should be placed in the hands of an attorney for collection; the purchaser would, upon demand, deliver up the machine to the seller or its assigns, or they might, without any previous notice or demand, and without legal process, take possession of the machine; upon failure to redeem it within five days by payment of the unpaid balance and the expense of retaking it, the seller might make such disposition of the machine as it should deem fit and all payments which had been made should be retained as liquidated damages. The alternative option was given the seller of selling the machine publicly or privately without notice, and the proceeds, less the expense of taking, holding, repairing, and selling it and 15 per cent. of the unpaid balance, or a reasonable attorney's fee, should be credited upon the amount unpaid; or without such sale there might be credited on the debt the fair market value of the machine at the time of its repossession, and, in either event, in consideration of the use and depreciation of the automobile and as liquidated damages for breach of the contract, the purchaser agreed to pay the balance due.

After Cartwright had paid $927.76, leaving six installments, amounting to $327.24, unpaid, under very embarrassing circumstances representatives of the C. I. T. Corporation, to which the obligation had been assigned, unlocked the automobile as it was parked on the street one night in June, 1932, and took it into posses-

sion. Cartwright promptly brought suit to recover the machine, and asked damages for its wrongful taking and retention, and charged that the obligation he had given contained $75.56 usury. He regained possession by an order of delivery. The company answered, setting up its right under the conditional sale contract to do what had been done, and asked judgment on a counterclaim for $327.24 and interest, being the balance due on the obligation, and for $100 on account of the wrongful detention of the machine by Cartwright. None of the so-called liquidated damages stipulated in the contract was sought.

The defendant denied the right of the plaintiff to the possession of the automobile and pleaded that as the owner it was entitled to the possession, and prayed accordingly. The trial court rendered judgment dismissing the petition. On the defendant's counterclaim it gave judgment over against the plaintiff for $327.24 with interest. While the judgment does not specifically adjudge the ownership and right of possession to be in the defendant as the only consistent corallary to the dismissal of the petition, that is its effect. See sections 180, 330, and 388, Civil Code of Practice; section 1665, Statutes; Morgan v. Williams, 179 Ky. 428, 200 S. W. 650. The result of this judgment is that the assignee of the seller is declared to be the owner of the automobile and entitled to its possession, after having been paid $927.76, and in addition has a personal judgment for $327.24. In short, the court gave to the holder of the note the machine and the full purchase price as well.

Since the adoption of the Uniform Sales Act (Kentucky Statutes, sec. 2651b-1 et seq.), the effectiveness of conditional sales contracts as instruments securing debts and their terms respecting the reservation of title and repossession of the chattels have been sustained as a general proposition. Brown v. Woods Motor Company, 239 Ky. 312, 39 S. W. (2d) 507; Commonwealth v. Larson, 242 Ky. 317, 46 S. W. (2d) 82; General Motors Acceptance Corporation v. Shuey, 243 Ky. 74, 47 S. W. (2d) 968, 969; Munz v. National Bond & Investment Company, 243 Ky. 293, 47 S. W. (2d) 1055, 1058; Johnson v. Sauerman Bros., 243 Ky. 587, 49 S. W. (2d) 331; General Motors Acceptance Corporation v. Dickinson, 249 Ky. 422, 60 S. W. (2d) 967.

As is pointed out in several of those opinions, be-

fore the enactment of this statute, through a long line of decisions, a contract of this nature, regardless of its name or form, was held to be a sale with the equivalent of a mortgage back. This gave to the seller only a lien on the chattel to secure payment of what was due him. At that time as between the parties the right of repossession was permitted if such right was stipulated in the agreement, provided that its enforcement was without violence, trespass, or breach of the peace.

The instruments now before us are different in a material respect from those heretofore considered under the Uniform Sales Act, in this: Here there was an absolute bill of sale or contract. Although a bill of sale in this form is not conclusive of a transfer of title, it is persuasive evidence of such fact. Moore v. Wilson, 230 Ky. 49, 18 S. W. (2d) 873. By it the seller effectually divested itself of title. Of course, since it was executed simultaneously, the conditional sales contract must be read with the bill of sale and the terms of the two instruments harmonized if possible. Doing this it must be said that notwithstanding the provision as to the title in the other instrument in which the purchaser obligated himself to pay the balance due, the transaction constituted a sale, and the effect of that stipulation was only to create a lien on the property to secure the debt. A. C. Morris & Company v. Heaton, 235 Ky. 66, 29 S. W. (2d) 617.

It is provided in the Uniform Sales Act (section 2651b-75, Ky. Stats.) that:

"The provisions of this act relating to contracts to sell and to sales do not apply, unless so stated, to any transaction in the form of a contract to sell or a sale which is intended to operate by way of mortgage, pledge, charge, or other security."

In Munz v. National Bond & Investment Company, supra, we approved in this language the conclusions of the Supreme Court of Michigan, in one of its cases, Burroughs Adding Machine Co. v. Wieselberg, 230 Mich. 15, 203 N. W. 160, namely:

"If the instrument confers a right to retake the property, retain the payments made, deduct the damages, and look to the buyer for any deficiency in the agreed price, it is consonant only with the remedies available under an instrument in the na-

ture of a chattel mortgage. If the seller is not limited to a right to retake the property and retain the payments made, but after reclamation may enforce payment of the remainder of the price, and the instrument permits that to be done, it is merely a security in the nature of a chattel mortgage. If the title is retained as a security for the price, and the obligation further to pay is not abated by a retaking of the property and retention of partial payments, then the transaction is not a pure conditional sale, but an undertaking in the nature of a chattel mortgage.''

This transaction comes within the purview of those conclusions. Taking the two instruments together, we have a simple, straight-out sale of an automobile and a promise to pay the balance of the purchase price in installments, subject to the right of acceleration, and the pledge or mortgage of the machine as security, coupled with the agreement that the mortgagee might repossess and dispose of the chattel and yet look to the debtor for the balance due. We must look to the law in order to ascertain the respective rights of the parties; more particularly to the legal remedies of the debtor.

While, as stated above, the right to peaceably take the chattel into possession is recognized, it has been uniformly held that the one exercising that right is required to deal fairly and equitably with the other party. Thus it is held that within a reasonable time, unless redeemed by the mortgagor, the one taking the property must dispose of it at a fair sale and upon adequate notice and then return to the mortgagor any surplus above the balance owing by him. Unless that is done, the taking of the property constitutes an illegal conversion. Hawkins Furntiure Company v. Morris, 143 Ky. 738, 137 S. W. 527; Montenegro-Riehm Music Company v. Beuris, 160 Ky. 557, 169 S. W. 986, L. R. A. 1916C, 557; Commercial Credit Company v. Cooper, 246 Ky. 513, 55 S. W. (2d) 381.

The reader will find interesting and instructive an address on ''Uniform and Conditional Sales in Kentucky'' by the Honorable S. S. Willis, delivered before the Kentucky Bar Association at its July, 1933, meeting, published in its Annual and in the Kentucky Law Journal, volume XXII, No. 2.

While this decision is planted upon the view of a

chattel mortgage, it is proper to point out that we have recently held that under the Kentucky statute (it not being supplemented by the companion uniform conditional sales act) the same rule of doing equity must be followed in the case of repossession of a chattel under a conditional sale contract not affected by any absolute sale contract as in the case at bar. General Motors Acceptance Corporation v. Dickinson, supra.

In the instant case, before the seller and mortgagee had a reasonable time in which to dispose of the automobile in the manner outlined, the purchaser and mortgagor obtained its possession by an order of delivery and the adjustment of the rights of the parties went into court. Therefore, the court should have adjudged the entire case. It should have been tried and disposed of according to the procedure prescribed by the Civil Code of Practice for the enforcement of liens and the application of the proceeds of a judicial sale. Section 695 et seq., Civil Code of Practice.

However, the right to possession of the machine should have been adjudged to the defendant, with appropriate protection of the plaintiff's rights. The petition claimed that there was usury in the note, and an issue was raised on that point. The entire obligation was given in payment of the machine. The so-called service charges were included in the instrument as a part of the purchase price or consideration, and therefore cannot be said to constitute usury. Nantz v. Hurst, 166 Ky. 396, 179 S. W. 400; McAllister v. Gingles, 244 Ky. 254, 50 S. W. (2d) 551; Manufacturers' Finance Trust v. Stone, 251 Ill. App. 414. The facts presented by this record do not seem to authorize the submission of any issue as to damages claimed by the parties for the wrongful taking and detention of the machine, the one from the other, respectively. The amount of the judgment is correct. The court should order a sale of the machine to satisfy the lien as above stated.

For this reason the judgment is reversed and the case remanded for consistent proceedings.